ABRAHAM EVELAND *v.* GEORGE WHEELER, Adminis-
TRATOR OF RUFUS G. BOWMAN, Deceased.

*Contract—Entirety— Cancellation— Consideration.*

Where parties to a contract for the purchase and sale of land (a part of the
price of which is secured by bond and mortgage on other property) agree to
cancel and surrender the contract of purchase, and do so, and nothing is said or
mutually understood as to the cancellation of the bond and mortgage, the con-
sideration for which the bond and mortgage were given being cancelled, the
bond and mortgage are likewise to be deemed cancelled.

This action was brought to obtain the cancellation of a bond
and mortgage at the time in process of foreclosure by Defendant's
intestate.

Issue being joined, the case was referred to a referee to hear
and determine, who reported in favor of the Plaintiff, and directed
judgment that the mortgage be discharged of record, and with
the bond be given up and cancelled.

The mortgagee was also perpetually enjoined from further at-
tempt to enforce them as valid instruments.

On appeal, the Supreme Court, at General Term, reversed
this judgment, and ordered a new trial, from which order an ap-
peal was taken by the Plaintiff to this Court; which appeal was
accompanied by a stipulation that in case such order should be
affirmed, judgment absolute might be entered against him.

The material facts found by the referee, and here necessary to
be considered, are as follows: In March, 1855, the Plaintiff and
Defendant's intestate entered into a written contract, by which
said intestate agreed to sell and convey to the Plaintiff a certain
farm in the town of Castile, county of Wyoming, containing
about one hundred and six acres, for the sum (as expressed in
the written contract) of three thousand dollars. On the same
day the Plaintiff, with one Charles Strong as his surety, executed
and delivered to said intestate his bond, in the penal sum of
$3,130, conditioned to pay the latter $1,565.31, with interest, in
instalments, as stated therein; and at the same time the Plain-

tiff, with his wife, executed and delivered to said intestate a mortgage, to accompany said bond, upon other lands, to secure the sum mentioned in the condition of that instrument; which mortgage was duly acknowledged, and was recorded in the county of Wyoming, where the lands covered thereby were situated. The remaining facts found by the referee are given in his fourth, fifth, sixth, seventh, and eighth findings, and here follow verbatim:

Fourth. The price or sum for which said tract of land, containing one hundred and six acres and seventeen-hundredths of an acre, was contracted to be sold, was forty-three dollars an acre, or four thousand five hundred and sixty-five dollars and thirty-one cents; and the said agreement above mentioned, and said bond and said mortgage, were executed and delivered to secure to the said Plaintiff the conveyance of said tract of land described in said contract, and to secure to said Defendant the purchase-price of said land, and for no other object, purpose, consideration, or qualification, except as particularly stated and set forth in said written contract.

Fifth. The Plaintiff, immediately after the making, executing, and delivery of said contract, bond, and mortgage, entered into the possession and occupancy of said tract of land described in said contract, and used, occupied, and enjoyed the same, and received the rents, profits, and proceeds thereof, and made repairs and improvements thereon for the period of about four years after the making, execution, and delivery of said contract, bond and mortgage, and made various payments upon said contract, and one payment upon said bond and mortgage, amounting to between four and five hundred dollars in the aggregate.

Sixth. It was afterward, either in the year 1858 or spring of 1859, mutually agreed between the Plaintiff and the Defendant that said written contract should be cancelled and annulled, and that said Plaintiff should surrender up and relinquish to said Defendant said tract, piece, or parcel of land described therein, and all claim, right, *title, or interest in and to the same, and to all payments made on said contract, bond and mortgage,* and also that

the Plaintiff should work said farm on shares, and the Defendant was to have one-half of the crops raised thereon.

Seventh. The Plaintiff did work said land on shares, and the Defendant received his half or share of the crops raised thereon; and said written contract was afterward, and on or about the 1st of April, 1860, cancelled by cutting or tearing off the seals of the same, and the Defendant resumed the exclusive possession and control of said tract, piece, or parcel of land.

Eighth. No agreement was ever made or entered into between Plaintiff and Defendant as to the cancellation of said bond and mortgage, or whether the same should or should not be deemed cancelled or discharged by the cancellation of said contract; on the contrary thereof, it was the *design and intention of the Defendant to retain and keep said bond* and mortgage in full force and effect; and the *Plaintiff designed and intended* that said contract, bond and mortgage, should all be cancelled and annulled.

As conclusion of law, the referee held and decided that the contract and bond and mortgage constituted one indivisible contract, and that the cancellation and annulling of the written contract was in law a cancellation of the bond and mortgage; and he directed judgment for the Plaintiff accordingly. The judgment was reversed by the General Term, on the ground, as appears from the opinion then delivered, that although the written agreement, bond and mortgage, were given at the same time, and related to the same subject, and for the purpose of construction were to be regarded as one contract, yet that they were divisible in their nature, and should, under the facts found, be deemed to stand separate and independent of each other; and consequently that the cancellation of the written contract, *of itself*, did not affect the validity of the bond and mortgage.

*H. L. Comstock* for Appellant.

*L. W. Thayer* for Respondent.

BOOKES, J.—It is not controverted, nor can it be, that the written agreement and bond and mortgage are, for the purpose of construction, to be read together, as constituting one contract.

The referee so correctly adjudged; and this was taken for granted or assumed by the Supreme Court. The three instruments were executed at the same time, were between the same parties, and related to the same subject-matter. Taken together, and not otherwise, they show the entire agreement. The authorities in support of this proposition are numerous, and are quite too familiar to require citation. So read and construed, the entire agreement, in its most material parts and significance, was to this effect: that the Defendant's intestate would convey the farm to the Plaintiff, who, in consideration thereof, would secure and pay to the former $4,565.31—the sum of $3,000, as stipulated in the written contract, and the balance of $1,565.31 by his bond and mortgage, covering other property—the terms of which were then agreed on and inserted in such instruments, which instruments were then executed and delivered.

The papers, taken together, evidenced a perfect agreement, and the entire agreement between the parties. They showed as well the duty of the intestate to convey, as also the obligation of the Plaintiff to secure payment of and to pay the entire sum constituting the consideration of the conveyance. Payment, or the securing of payment, to the intestate, according to the terms of the agreement, was the consideration for the conveyance; and the conveyance was the consideration for such payment. The promises were mutual and dependent. A conveyance could not be required without payment, or the securing of payment, according to the terms of the agreement; nor could payment be enforced without the delivery or tender of the conveyance. Under this condition of duty and obligation, the parties, by mutual consent, cancelled and annulled the written contract, and the Plaintiff surrendered to the intestate the farm, the possession of which he had held, under the agreement to purchase, for the period of about four years. During his occupation the Plaintiff made repairs and improvements on the farm, and also various payments on the contract, and one payment on the bond and mortgage, in the aggregate amounting to between four and five hundred dollars; all claims for which repairs, improvements, and

payments were relinquished by him on such cancellation. There was not, however, any express agreement between the parties that the bond and mortgage should or should not be deemed cancelled and discharged by the annulling of the contract; on the contrary, as the referee certifies, " it was the design and intention of the Defendant (the intestate) to retain and keep said bond and mortgage 'in full force and effect; and the Plaintiff designed and intended that said contract, bond and mortgage, should all be cancelled and annulled." Notwithstanding this diversity of intention and mutual misunderstanding of the parties, neither asks to be restored to his former position for that cause, but both plant themselves on the surrender and cancellation of the written contract, hold it as binding and conclusive as regards their rights, and demand an adjudication by the Court as to its legal effect. The question then is, did the cancellation of the contract, ipso facto, also cancel the bond and mortgage ?

We are of the opinion that such was its legal effect, in the absence of an express agreement between the parties to the contrary. On the cancellation of the contract the intestate was discharged from all obligation to convey, which obligation constituted the sole consideration for the Plaintiff's promise to pay. The essential element to the validity of the bond and mortgage— a consideration—was then wanting. They might undoubtedly have been kept in force by an express agreement to that effect, having for its consideration the cancellation of the contract, and the surrender of the premises contracted to be conveyed. But no such condition was imposed. The instruments must, therefore, stand or fall with the consideration on which they were made to depend in their inception. We are not without authority on this question.

In Dearborn *v.* Cross (7 Cow. 48), the former bound himself by bond to sell land to the latter, who gave his notes for the consideration-money, and took possession. Afterward the land was surrendered to Dearborn, who sold it to another. It was held that although the bond was not cancelled or surrendered, yet it was in legal effect discharged, and consequently no action could be maintained on the notes.

In De Peyster *v.* Pulver (3 Barb. 284), it was decided that when a contract has been abandoned by mutual agreement of the parties thereto, one party cannot sue the other upon a note given as a part of the consideration for the performance of the contract by the party suing. In this case it was remarked by the Court, per Harris, J. : " The acts of both parties sufficiently show a mutual agreement that the contract between them should be abandoned. The contract being thus abandoned by mutual agreement, the note for which this action is brought, and which was given as a part of the consideration for the performance of the contract by the Plaintiff, cannot be recovered."

So in the case now under examination, the consideration of the bond and mortgage sought to be set aside and annulled was the agreement by the Defendant's intestate to convey to the Plaintiff the farm described in the contract. This agreement to convey was cancelled by mutual consent of the parties, without any agreement that they should remain on foot as valid, obligatory instruments. There is, therefore, no good reason for their enforcement; and they must be deemed to be invalid, like other contracts, the consideration of which has wholly failed.

When, as in this case, the failure of the consideration touches the principal point and essence of the contract, such failure constitutes good ground in equity to set it aside. These considerations require a reversal of the order of the General Term.

There is another view of the case not without significance. The referee finds that the Plaintiff intended that the bond and mortgage should be cancelled, and that the Defendant's intestate intended the reverse.

Did the intestate, although intending the reverse, know of Plaintiff's understanding and intention? If so, and he permitted him to act upon such understanding, he is now bound by it, inasmuch as he retains all the advantages of the arrangement.

In such case he will be concluded on well-settled principles applicable to the doctrine of estoppel.

We think it quite probable, from the facts found, that the intestate knew of the Plaintiff's intention and understanding at

the time of the cancellation of the contract.   But it is unnecessary to consider this question.   The order appealed from must be reversed, on the ground above discussed, unless evidence was admitted or rejected prejudicial to the Defendant's rights.   On a careful examination of the case, we are of the opinion that no error exists in this regard.

The order appealed from must be reversed, and the judgment directed by the referee affirmed, with costs.

All concur except GROVER, J.

Affirmed.

JOEL TIFFANY,
State Reporter.
