ENOCH L. WHITE'S ADMRX. *v.* CENTRAL VERMONT RAILWAY COMPANY.

November Term, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed February 11, 1914.

*Pleading—Demurrer—Waiver by Pleading Over—Motion in Arrest After Demurrer—Defective Declaration Cured by Plea —Departure—Mode of Taking Advantage—Death—Action —Federal Employers' Liability Act—Damages—Contributory Negligence—Master and Servant—Operation of Railroad—Rules—Injuries to Servant—Jury Question—Witnesses —Impeachment —Cross-Examination —Scope —Judicial Admissions—Instructions—Cure of Instructions.*

Recovery can be had under the Federal Employers' Liability Act only when both the injured employee and his employer were engaged in interstate commerce at the time of the injury.

A defendant who pleads over after his demurrer to the replication has been overruled, and goes to trial on the merits, waives his demurrer.

After judgment on a demurrer nothing that could have been reached by the demurrer can be the basis of a motion in arrest of judgment.

A declaration that is bad for lack of essential averments is made good by a plea that supplies those averments.

Advantage can be taken of a departure only by demurrer, and so where defendant traversed a replication relying on a departure, and the issue was found against him, judgment will not be arrested.

In an action for the wrongful death of plaintiff's intestate, who was killed while acting as brakeman on defendant's train, the answer of the undertaker, as to where he found intestate's body, that it was "right up in front of the engine, on the pilot, you might say, seemed to be crowded up there," cannot, in view of the question, be taken to evidence pain and suffering of the intestate, for which plaintiff claimed no damages.

Where the evidence warrants the preliminary finding of the court that an original document is lost, and has been looked for without success in all places where it was likely to be found, a copy is properly admitted.

Where the court asked counsel to make his offer of evidence, he had a right, in the hearing of the jury, to state his offer to prove such facts as he believed were material to the case, and the court could permit him, within proper bounds, to state the grounds upon which he relied as a justification for the offer; and the record not showing that, in making the offer and stating the grounds thereof, counsel acted improperly, but showing that the court instructed the jury wholly to disregard what he said, no harm could have resulted.

On review, an exceptor will be confined to the objection that he made below to the admission of evidence.

Where a railroad company had in force two rules relating to following trains, Rule 91, providing that, unless some form of block signals is used, trains in the same direction must keep at least five minutes apart, but a train must not follow a train carrying passengers or operating a snow plow, until a report is received of its arrival at a station ahead, and Rule 221, providing that, when no orders are received at a train-order office, the signal must indicate "proceed," except as provided in Rule 21, and that a train stopped by a train-order signal must not proceed without a clearance card, or a caution card, giving warning of any train ahead, although train orders may have been received, those two rules

related to freight trains as well as to passenger trains, and there-
under a freight train should not be allowed to proceed when an-
other train is immediately ahead of it, unless such clearance
card, or caution card, giving notice of the train ahead, is delivered.

In an action for the wrongful death of the rear brakeman on a freight
train resulting from a following train colliding with it, where the
conductor of the following train, called by plaintiff, testified in
chief only as to the circumstances of his own run, it was not
proper cross-examination to ask him as to how in designated
circumstances he would protect the rear end of his train.

It was not error to deny a motion to strike out the whole of a witness's
answer on the ground that it was not responsive, where it is in
part responsive and in part not responsive.

In an action under the Federal Employer's Liability Act, evidence that
deceased was a church member is admissible in determining the
pecuniary damages to his infant children owing to the loss of his
moral training.

In an action for the wrongful death of a railroad brakeman, where
the conductor of his train gave testimony for defendant tending
to show that the brakeman was not discharging his duties at the
time of the accident, the conductor's written statement, reciting
the contrary and signed by him, was admissible to impeach him;
and the question to the conductor as to whether he meant what
is recited in the written statement was not improper as calling for
his conclusion.

The construction of written railroad rules is for the court, unaided by
expert testimony except to define terms of art.

The record not showing that plaintiff's attorney acted in bad faith,
or said anything improper, in making in the hearing of the jury
an offer of evidence and then withdrawing it, no presumption will
be made in support of an exception thereto.

In an action for the wrongful death of the rear brakeman on a freight
train, resulting from a following train colliding with it, where the
engineer of the colliding train testified in chief that his engine was
an "A No. 1" engine, it was proper, on cross-examination, to elicit
that on several occasions within a month before the accident
the cylinders were leaking steam.

In an action for the wrongful death of the rear brakeman on a freight
train, resulting from a following train colliding with it, where the
rules adopted by the railroad company, governing the movement

of trains, provided for a different method in case there were no block signals, evidence that the railroad company did not use block signals was admissible.

The whole of offered evidence is properly excluded, if any of it is inadmissible.

Under the Federal Employers' Liability Act contributory negligence goes only in mitigation of damages.

Averments in the pleadings of both parties stand as judicial admissions by both, and so are outside the range of evidence either to establish or to dispute.

In an action for the wrongful death of the rear brakeman on a freight train, resulting from a following train colliding with it, the question of defendant's negligence was for the jury, where the evidence tended to show that the following engine leaked steam more than engines in proper condition and so badly that its crew could not see the switch lights nor the rear lights of the train ahead; and that on several occasions within a month before the accident it had been booked for repairs for leaking steam.

In an action for the wrongful death of the rear brakeman on a freight train, resulting from a following train colliding with it, evidence that deceased had no notice that another train, moving at a higher rate of speed, was following his train, tends to prove the averment that he was injured by a cause unknown to him..

Where defendant made twelve requests to charge and excepted "for the failure of the court to charge as requested in original requests Nos. 1 to 12 inclusive, and for failure to charge as requested in additional requests Nos. 1, 5, 6, 7 and 11," and the exceptions were "allowed severally so far as the charge did not comply with said requests, and so far as said requests were material and stated a correct proposition of law," the exceptions were too general to reserve any question.

In an action for the wrongful death of the rear brakeman of a freight train, resulting from a following train colliding with it, the court properly charged that the duty of the brakeman by fusees and torpedoes to protect his train against one following was to be determined by what a prudent brakeman would have done in like circumstances.

Where the court, after an exception to an instruction, gave a supplemental charge on the same subject to which no exception was taken, any defect was cured.

334 WHITE'S ADMRX. *v.* C. V. RAILWAY CO. [87

In an action for the wrongful death of the rear brakeman on a freight train, resulting from a following train colliding with it, where defendant claimed that deceased was negligent in not protecting his train with torpedoes and fusees, a charge on plaintiff's right to recover notwithstanding such negligence, on account of the defective condition of the colliding engine, need not detail all the elements necessary to warrant recovery, where they were all properly covered by previous instructions.

In an action for wrongful death, an instruction that, in determining what deceased was worth to his family, his actual earning power should be considered and "his power to earn for the length of time that he may be expected to live," sufficiently submits to the jury the contingency of illness or loss or impairment of earning power before death, and also the contingency of death before the expiration of his expectation of life, as shown by the evidence.

In an action in the state court based on the Federal Employers' Liability Act, the federal law relating to contributory negligence governs.

Where a declaration consists of counts some of which are good and others bad, and the verdict is general, a motion in arrest of judgment because of the defective counts should be overruled.

CASE for negligence, claimed by plaintiff to be brought under the Federal Employers' Liability Act, but by defendant to be under the state law. Pleas, the general issue, and a special plea in bar alleging facts showing the cause of action to be under the Federal Employers' Liability Act, and concluding with a verification. Replication to that plea, *precludi non,* because, etc., averring the facts alleged in defendant's said special plea, and concluding to the country. The tendered issues joined. Trial by jury at the March Term, 1913, Franklin County, *Miles,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The defendant seasonably demurred to the replication. Demurrer overruled and replication adjudged sufficient, to which the defendant excepted, and thereupon the trial by jury was had. The following is a copy of Form A Clearance Card, with explanatory note accompanying it, referred to in the opinion, as appears in defendant's book of rules:—

---

FORM—(A.)

## CENTRAL VERMONT RAILWAY CO.

# CLEARANCE.

_____ (B)      ·   6.45 A.  **M.** _____      June 5,      **19**    11

**Train** _____ No. 12 _____

I have orders _____ (5-7 and 9) _____ (Nil) _____ **for your train.**

**The next train ahead is** _____ (Extra 751) _____ **It left this station at**

8.35 a. **m., and arrived at** _____ · (C) _____ **at** 8.55 a. **m.   Signal is**

**displayed for** _____ (Extra 576) _____ (Block) _____ **and does not now affect you.**

_____ John Jones. _____

**Operator.**

**This does not affect any train orders you may have received.**

Conductors and Engineers must each have a copy, and see that their train is correctly designated in the above form.

---

NOTE.—The numbers of orders for the train must be filled in in figures.  When there are no orders the word "nil" must be written in.  If the next train ahead has not reached the next telegraph office the words "not yet" must be written in the blank space provided for the time of arrival at the next telegraph office.  The other blank spaces are to be filled in as indicated by small type.  Operators must keep the lowest copy.

Where the Automatic Block Signals are in service instead of Station Block the information relative to the train ahead may be omitted.

*C. W. Witters, Harry B. Amey* and *C. S. Palmer* for the defendant.

*C. G. Austin & Sons* for the plaintiff.

Any defect in the declaration for failure expressly to allege facts showing the action to be founded on the Federal Act is cured by the plea which supplies exactly those facts. *Wood* v. *Scott,* 13 Vt. 42; *Insurance Co.* v. *Wright & Son,* 55 Vt. 532; *Walker* v. *Wooster's Admr.,* 61 Vt. 404; *Probate Court* v. *Vanduzer & Goodrich,* 13 Vt. 135. Besides, the plea is a judicial admission of those facts, and a waiver of all controversy in respect thereof. *Holbrooke* v. *Quinlan & Co.,* 84 Vt. 411; *U. S.* v. *U. S. F. & G. Co.,* 83 Vt. 278; *Webster* v. *State Mut. Fire Ins. Co.,* 81 Vt. 75.

WATSON, J.   This is an action on the case, claimed by the
plaintiff to be under the Federal Employers' Liability Statute,
but by the defendant to be under the State law, to recover for
personal injuries resulting in the death of the plaintiff's in-
testate, Enoch L. White, on the 12th day of January, 1912.
The declaration contains several counts, but in the respects
essential to be noticed in disposing of this question, the allega-
tions of all the counts are substantially alike, and may be stated
with sufficient definiteness for this purpose as follows: that
prior to and on the day named above, the defendant corporation
was the owner and operator of a certain railroad, extending
from St. Johns in the Province of Quebec in the Dominion of
Canada, to and through the city of St. Albans, in the State of
Vermont, and through the towns of Braintree, Randolph, and
Bethel to White River Junction in said State, and in connection
with other lines of railroad to and through other states, was then
and there engaged in commerce between several states, and
between the State of Vermont and the Dominion of Canada, as
a common carrier; that on the day aforesaid the intestate was
engaged in the defendant's employ on its railroad as a freight
brakeman, and that while thus engaged, at a certain point
between the stations of Randolph and Braintree, solely by reason
of the carelessness and negligence of the defendant, its agents,
servants, and employees, a collision between two of the defend-
ant's freight trains occurred, and the said intestate by means
thereof and solely by reason of the negligence of the defendant,
its agents, servants, and employees, and without fault or con-
tributory negligence on his part, while in the performance of
his duty as brakeman on one of said trains, was instantly killed.
The allegations further show that the intestate left surviving
him a widow, then pregnant, and minor children including the
one yet unborn but subsequently born alive, and that this suit
is brought by the personal representative of the intestate for the
benefit of said widow "and next of kin minor children, under
and by virtue of the statute and laws in such case made and
provided."

None of the counts contain averments showing that the
train on which the intestate was engaged at the time of his injury,
was being operated in interstate or foreign commerce, nor that
he was then employed by the defendant in such commerce, with-
out which character of his employment there could be no right

of action under the Federal Employers' Liability Act. *Mondou* v. *New York, New Haven and Hartford Ry. Co.,* 223 U. S. 1, 56 L. ed. 327; *Pedersen* v. *Delaware, Lackawanna & Western Ry. Co.,* 229 U. S. 146, 57 L. ed. 1125. The defendant pleaded in bar. expressly alleging, among other things, that at the time of the happening of the several things in the plaintiff's declaration mentioned, the defendant was and ever since has been a common carrier by railroad engaged in commerce between the State of Vermont and the State of Massachusetts and the State of Connecticut, and between the State of Vermont and the Dominion of Canada, and that at the time the plaintiff's intestate received the injuries complained of in the declaration, he, the intestate, was employed by the defendant, common carrier as aforesaid, in such commerce. The plaintiff replied *precludi non,* because, etc., iterating the said allegations in the defendant's plea, and averring that by the laws and statutes of the United States and of the State of Vermont, the court has full and complete jurisdiction of the matters and things set forth in the plaintiff's declaration to determine according to law,—concluding to the country.

Defendant demurred to the replication, because (1) it is no answer to the defendants' plea; (2) it is a complete departure from the writ; (3) it introduced a new cause of action not contemplated in the declaration; (4) it does not support or fortify the declaration; (5) it does not present matter of estoppel to defendant's plea; (6) it does not traverse the plea; (7) it does not confess and avoid the plea; and (8) the declaration purports to recover damages under the laws of the State of Vermont, while the replication confesses that the action should be under the Federal Employers' Liability law.

On hearing, the demurrer was overruled and exception saved. Thereupon a jury was empanelled, and a trial had, resulting in a verdict for the plaintiff, and judgment was rendered thereon. By thus pleading over and going to trial upon the merits, the defendant waived its demurrer. *German* v. *Bennington & Rutland R. Co.,* 71 Vt. 70, 42 Atl. 972.

After verdict, the defendant undertook, by motion in arrest of judgment, to raise the same legal questions respecting the declaration with reference to the Federal Employers' Liability law, as were presented on the demurrer, though some of the assignments were somewhat different in form, one being that

22

the declaration purports to be under the said Federal statute, but contains no allegation that the defendant was engaged in interstate commerce at the time of the injury to the intestate, nor that the intestate was then and there engaged in the promotion of such commerce, and excepted to the overruling of the motion. The rule is, however, that after judgment on demurrer by solemn determination, there can be no motion in arrest of judgment, for any exception that might have been taken on arguing the demurrer. 2 Tidd's Pr. 918; *Edwards* v. *Blunt,* 1 Str. 425; *Ross* v. *Bank of Burlington,* 1 Aik. 43, 15 Am. Dec. 664. Moreover, though the declaration lacks averments showing that the intestate, at the time of his injury, was employed by the defendant in interstate or foreign commerce, yet not only was the declaration aided in this respect by the defendant's expressly averring in its plea in bar the facts omitted from the declaration and essential in order to set forth a good cause of action under the Federal law (*Ralston* v. *Strong,* 1 D. Chip. 287; *Lycoming Fire Ins. Co.* v. *Wright,* 55 Vt. 526), but the matter replied by way of departure,—if it was a departure, a question we do not decide,—would have been a sufficient answer, in substance, to the defendant's plea, had the plaintiff pleaded it in the first instance, and the verdict in favor of the party who made the departure cured the fault. The only mode of taking advantage of a departure is by demurrer, and since the defendant instead of standing upon its demurrer, took issue upon the replication containing the departure, and it being found against the defendant, the court will not arrest the judgment, for after such finding it necessarily appears on the whole record that the plaintiff is in law entitled to judgment. *Lee* v. *Raymes, Sir T. Raym.* 86; 2 Saund. Pl. & Ev. 807; 1 Chitt. Pl. 648; Gould's Pl., Ch. VIII, Sec. 79; Stevens' Pl. 147; *Farmers & Mechanics Bank* v. *Flint,* 17 Vt. 508.

It follows that since by its plea in bar the defendant expressly supplied the omission in the declaration, essential to a good cause of action under the Federal law, and since issue was joined on the replication departing (defendant asserts) from the declaration accordingly, the defendant's objection to the introduction of any evidence because the declaration does not state facts sufficient to constitute a cause of action under that law, was properly overruled.

The deposition of W. E. Lamson was used by the plaintiff. The deponent, the undertaker who prepared the body of the intestate for burial, testified to being at the scene of the accident soon after the collision. On being asked where he found the body of the intestate, he answered, subject to defendant's exception on the ground that damages for pain and suffering were not claimed, "Right up in front of the engine, on the pilot, you might say seemed to be crowded up there." It is argued that the words "crowded up there" mean pain and suffering. But this is not so when the answer is considered, as it must be, in connection with the question asked.

It appeared that the freight train on which the intestate was engaged when killed was No. 401, hereinafter designated as 401, running extra northerly from White River Junction, and that with it collided freight train No. 708, hereinafter designated as 708, also running extra from the same place and in the same direction. The railroad is a single track. During the direct examination of L. O. Gibbons, the conductor of 401 at the time of the accident, he was shown a paper marked plaintiff's exhibit "C," and various questions were asked him by way of identification of the paper as a copy of a running order out of White River Junction. These questions were objected to on the ground that there had been no showing that it was the paper the witness had on the night of the accident, that the defendant had no knowledge as to its source, and that the loss of the original had not been shown. Such evidence was received subject to defendant's exception. Upon that evidence and the evidence relating to the loss of the original and search for same, the court found that the original was lost, that the witness had made all reasonable search for the same in the places where it was likely to be found but was unable to find it, and that "C" was a copy thereof. All this appearing, "C" was received in evidence subject to defendant's exception upon the ground stated. The bill of exceptions further states that substantially the same appeared with reference to plaintiff's exhibits "D" and "E," as appeared with reference to "C," and the same objections and rulings were made and exceptions taken. The transcript of the evidence is before us for the purpose of showing the tendency of the evidence and is to control. A careful examination of the evidence shows the court's findings to have been warranted, and the three exhibits were properly admitted.

During the examination of the same witness, plaintiff offered in evidence Rule S-71 of defendant's rule book, which was objected to as immaterial. On being asked by the court to state his offer, plaintiff's counsel stated at some length their claim in that behalf, concluding by saying he did not want an exception if he could avoid it. Defendant excepted to the offer made in the presence and hearing of the jury "because the plaintiff's attorney has been testifying," also excepted to the remarks of the attorney. Plaintiff's counsel, being requested by the court, had a right to state his offer to prove such facts as were thought to be material to the case (*Chicago, etc. R. Co.* v. *Fietsam*, 123 Ill. 518, 15 N. E. 169); and the court could permit him, within proper bounds, to state the grounds upon which he relied as justification for the offer to which opposing counsel objected. *Gilbert* v. *Michigan Cent. R. Co.*, 116 Mich. 610, 74 N. W. 1010. Nothing appears of record showing that the attorney, in making the offer and stating the grounds therefor, exceeded legitimate action. Yet to guard against harm resulting to the other side, the court, on exception being taken, told the jury that they should not consider at all, in determining any issue in the case, what the counsel had just said to the court, that it was not directed to them, but to the court. No harm could have resulted to the defendant.

The plaintiff's attorney offered Rule 324 which reads as follows: "Operators are required to keep a record of the time trains pass their stations, and be prepared to furnish information promptly to those that should receive it," the attorney stating, "We are going to show that at Bethel the operator had a record of the time 401 passed there, or rather that he ought to have had a record under this rule,—it was his duty to have a record of the time 401 passed there,—and that he ought to have informed himself of the approach of 708 to be prepared to furnish information to 708; and expect to show that when 708 got its clearance card at Bethel this operator drew a dash through the space where the rule says he must tell them when 401 left that station, and knowing that that train was between Bethel and Randolph at that time and only 21 minutes away he gave him no information at all, omitting it from the clearance card." The rule was admitted in evidence against defendant's objection and exception on the ground that it was incompetent, irrelevant, and immaterial. In the defendant's brief the only

point made under this exception is that "The hypothesis upon which the question was asked is incorrect. There is nothing in the statement of facts to warrant the assumption that 'The rule says he must tell them when 401 left that station.' The rule does not so state." This ground of the exception was not stated in the court below, and it is not considered.

Wm. L. Wright, who was the conductor of 708 on the night of the accident, testified that he received a 19 order at Bethel, and that he delivered the order to the engineer of the train, and after making the order complete the train proceeded; that with this order he received a clearance card, and a copy of the same was there given to the engineer, but it did not contain a report of any train ahead. Against the objection and exception of the defendant on the ground that rule 221 did not apply in the circumstances of this case, the witness was allowed to testify that there was no notice to him on this clearance card, according to rule 221 and Form A, that the next train ahead was 401, and of the time it left Bethel. It is said in argument that rule 221 was in force, but that the situation on the occasion in question was governed by rule 91, which it is said does not require any notice in the clearance card of the freight train ahead when there is another freight train following, if the forward train has been gone five minutes. This involves the construction of those two rules, as applied to the conditions shown by the evidence. Train 401 consisting of low-wheeled engine 401 drawing eighteen loaded and sixteen empty freight cars, and train 708, consisting of engine 708, high-wheeled and faster than engine 401, drawing twelve loaded and twenty-two empty freight cars, were both sent out from White River Junction, destined for Roxbury. Train 401 left White River Junction at 6 o'clock P. M. and 708 at 10:12 o'clock P. M. By reason of delays on the road, 401 did not stop at Bethel until 11:52 P. M. It took water there and left at 12:15 A. M., arriving at Randolph at 12:50. It received a 19 order there, stating that No. 6, which was an opposing passenger train, would run so many minutes late. Train 401 left Randolph at 12:54, and arrived at the place of the accident, 1⅘ miles farther on, at 1:07 A. M. Train 708 arrived at Bethel at 12:30 A. M., where the train order signal was out. There the train received orders and a clearance card, form A, as stated above, and left at 12:36 A. M., passed Randolph at 1 o'clock without stopping, and arrived at the place of the accident at

1:07 A. M.   The evidence tended to show that during this trip those in charge of 708 had no knowledge and received no notice or warning of 401 on the track ahead.

Automatic block signals were not in service on defendant's railroad, but station block signals were.   Rule 91 is as follows:

"Unless some form of block signals is used, trains in the same direction must keep at least five minutes apart, except in closing up at stations, but a train must not follow a train carrying passengers or operating a snow plow until a report is received of its arrival at a station ahead, except that a train may follow twenty minutes after the departure of a train carrying passengers or operating a snow plow, when either the station from which it is to follow or the next station ahead is not a telegraph station, or when communication with the train dispatcher is interrupted, and the wire failure is noted on the clearance.

"The train order signal will be used by operators to maintain the intervals required by this rule.

"Schedule speed must not be exceeded by sections of trains other than the first section, nor may a train following a train carrying passengers, exceed the schedule speed of such train unless clearance shows arrival at a station ahead."

And Rule 221:

"A fixed signal must be used at each train order office, which shall indicate 'stop' when trains are to be stopped for train orders.   When there are no orders, the signal must indicate 'proceed,' except as provided in Rule 91.

"When an operator receives the signal '31' or '19' followed by the direction, he must immediately display the 'stop' signal for the direction indicated, and then reply 'stop displayed,' adding the direction; and until the orders have been delivered or annulled, the signal must not be restored to 'proceed' except by train order.

"A train stopped by a train order signal must not proceed without a clearance card Form 'A' or a caution card Form 'C,' although train orders may have been received."  This rule contains a further paragraph, not material here.  A copy of the blank "Form A," clearance card, prescribed by the defendant's Book of Rules, and of the explanatory note accompanying it therein, appear in the statement of the case.

Since this case in no wise pertains to a train carrying passengers or operating a snow plow, the two rules quoted will be considered solely with reference to freight trains. Rule 91, relating to the movement of trains where no form of block signals is used (as in the case before us), provides that trains in the same direction must keep at least five minutes apart, except in closing up at stations, and that to maintain such interval, operators will use "the train order signal." By Rule 221 this same signal must be used at each train order office, and shall be made to indicate "stop," when trains are to be stopped for train orders, and when there are no orders the signal must be made to indicate "proceed," except as provided in Rule 91, which exception means, as we have seen, when the operator is required by the latter rule to stop a train in order to maintain the required interval between it and the preceding train in the same direction. By Rule 221 when a train is stopped by a train order signal, whether it be for train orders under that rule, or to maintain the interval as required by Rule 91, it "must not proceed without a clearance card Form 'A' or a caution card Form 'C,' although train orders may have been received." That this construction is in accordance with the contemplation of the defendant's operating rules is seen by referring to blank "Form A" clearance card therein, with the explanatory note. Blank spaces are left to be filled in, and concerning them the note says: "The numbers of orders for the train must be filled in figures. When there are no orders the word 'nil' must be written in. If the next train ahead has not reached the next telegraph office the words 'not yet' must be written in the blank space provided for the time of arrival at the next telegraph office. The other blank spaces are to be filled in as indicated by small type. Operators must keep the lowest copy. Where the automatic block signals are in service instead of station block the information relative to the train ahead may be omitted." The conductor and engineer must each have a copy. The only exception mentioned in the note, to the requirement of information relative to the train ahead, is when automatic block signals are in use. If intended to exclude such requirement as to freight trains, scheduled or extra, it should seem most natural to indicate such intention in connection with the exception made. We think no such exclusion was contemplated, and we hold that Rule 221 was applicable in the circumstances of

this case, and that a compliance therewith required the clearance card to train 708 at Bethel, to be filled in to show the next train ahead (No. 401), the time when it left the station at Bethel, and that it had not yet arrived at Randolph. The blank spaces provided in that form of clearance card to be filled in with such information were not filled out at all, a dash being made in each space instead.

The witness Wright, conductor of train 708 on the night in question, called as a witness by the paintiff, having testified in examination in chief, that he received an order and clearance card at Bethel; that there was no stop after leaving Bethel, and he had no notice whatever that train 401 was ahead of him; that he did not believe he was going to meet a freight train between Randolph and Braintree; that he was running between twenty and twenty-three miles an hour; that he saw no tail lights of 401 at any time before hitting that train, and no warning or notice of any kind that 401 was ahead of him; and that there was a straight track above Randolph back from the scene of the accident for about half a mile, was asked in cross-examination, "Q. And supposing you were delayed on sidings and after you got back on the main line, a lot of time is lost, how do you protect your rear end?" It was not error to exclude the question as not cross-examination.

One Beeman, called by plaintiff, having testified that the intestate had rented a house of him for nearly three years, was asked, "Q. And after renting it, did you, previous to his death, make a contract of sale of the house and property to him?" The witness gave a long answer, some of it responsive to the question and some, not. Defendant moved to strike out the answer on the ground that it was not responsive, too involved, and a part of it immaterial. On being asked what part of the answer it desired to have stricken out, the defendant said the whole of it as not responsive to the question. The answer being responsive in part, no error was committed in overruling the motion.

Against the objection of immateriality, plaintiff was permitted to testify that the intestate was a member of a church, as indicating the moral training and discipline and influence which would have been received from him by his children. We think this was proper evidence to be considered by the jury in determining the pecuniary damages occasioned by his death.

*Michigan C. R. Co.* v. *Vreeland,* 227 U. S. 59, 57 L. ed. 417; *Tilley* v. *Hudson River R. R. Co.,* 29 N. Y. 252, 86 Am. Dec. 297; *McIntyre* v. *New York Cent. R. R. Co.,* 37 N. Y. 286; *Board of Commissioners* v. *Legg,* 93 Ind. 529; *Opsohl* v. *Judd,* 30 Minn. 128; *Illinois, etc. R. R. Co.* v. *Weldon,* 52 Ill. 290; *Baltimore, etc. R. R. Co.* v. *Wightman's Admr.,* 29 Gratt. 431.

L. O. Gibbons, the conductor of train 401, was called by the defendant, and testified in direct examination that the intestate was sitting in front of the stove in the main body of the caboose lighting his pipe when last seen by the witness after leaving Randolph. The purpose of this testimony was to show that the intestate was acting improperly at the time of the accident. To rebut this inference, the plaintiff asked the witness in cross-examination if he did not state in writing as follows: "We were doing all I thought necessary and proper to do on that occasion, he was in the line of his duty as well as myself, and other men of the train, and it was not the fault on my part or the part of Mr. White (intestate) that caused the collision." Defendant objected on the ground that the writing had not been shown to be signed by the witness. Yet the witness had testified that he signed it. The further question to the witness, "Did you intend to say at that time what I have read to you here?" was objected to on the ground that it was a conclusion. The witness answered, "Yes." The question called for a fact, not a conclusion, consequently the objection made is without force.

The defendant called one J. E. Maun as a witness, and having qualified him as an expert on railroad rules, asked him what duty rule 91 imposes upon the rear brakeman, the defendant claiming that it was entitled to the opinion of an expert upon the rules. The question was excluded and exception saved. The construction of this rule, if material, was for the court, and while experts may be called to define terms of art, to explain the principles of their science, where such principles are necessary to be understood, to state the condition and practice of their business, when material, they cannot as witnesses be permitted to instruct the court as to the meaning and legal construction of a written instrument, nor to give their opinion thereon. *Corning* v. *Burden,* 15 How. 252, 14 L. ed. 683; *Winans* v. *New York & Erie R. R. Co.,* 21 How. 88, 16 L. ed. 68; *McIsaac* v. *Northampton, etc. Co.,* 172 Mass. 89, 70 Am. St. Rep. 244, 51

N. E. 524; *Fuller* v. *Metropolitan L. Ins. Co.*, 70 Conn. 647, 41 Atl. 4; *Pratt* v. *Dunlap*, 85 Conn. 180, 82 Atl. 195.

Defendant called as a witness one Preston and showed by him that he had been a locomotive engineer for twenty-four years; that in November and a portion of December, 1911, he ran engine 708 between St. Albans and White River Junction; and that she was an "A-number-one" engine. In cross-examination the witness testified to booking on the 21st day of the latter month, "pack the right valve stem," because that valve stem was leaking, and further testified to booking, "pack under stem joint," because it needed it. Plaintiff's attorney then offered to show that certain repairs were reported necessary on this engine by the witness on the 14th, 18th, and 21st of December. In making the offer the attorney said: "We offer to show this leaking of steam on the 21st of December,—on the 18th of December,—in other words, these engineers, both of them, have testified that when an engine was out of repair they booked it and they relied on these books to fix their memory about it, and in cross-examination I have referred to these books because they referred me to them." The question was waived, and an exception was allowed the defendant to the making of the offer, on the ground stated, "It has all gone to the jury from Mr. Austin." It does not appear that the attorney in making the offer acted in bad faith, nor that he said anything improper within the hearing of the jury, and presumptions will not be made in support of the exception.

Nor was it error to allow, subject to defendant's exception on the ground that the evidence was incompetent and immaterial, the same witness to testify that engine 708 was leaking from the right valve stem on the 21st of December, when he came in; nor, that on the 18th of the same month she was leaking from "that right by-pass head." In neither case was the testimony outside of the scope of proper cross-examination.

One Kramer was called by the defendant as an expert on rules and on the operation of railway trains on the road. In cross-examination he was asked whether the defendant company operated trains by block signals, and against the objection of incompetency and immateriality, the witness answered that it did not, as far as he knew. In view of the form of clearance card A and the explanatory note accompanying it in defendant's book of rules, already noticed, the evidence objected to cannot

well be said to be immaterial, and how it was incompetent has
not been pointed out.    Evidence of the same fact was introduced
by both parties.

The defendant offered to show by its witness, one Fitz-
simons, an expert on engines, and a master mechanic, as follows:
"We would like to show that under the Federal law those en-
gines all are frequently inspected and that this (No. 708), among
the others, was inspected prior to the time when it was used on
this occasion and was found all right."    This offer includes not
only engine 708, but engines in no wise connected with this
case.    As to the latter, the evidence was not admissible, conse-
quently the whole was properly excluded.      *Vaillancourt* v.
*Grand Trunk Ry. Co.,* 82 Vt. 416, 74 Atl. 99.

At the close of the evidence defendant moved for a verdict
on ten different grounds, numbered from 1 to 10 consecutively.
The different grounds will be referred to and considered by num-
ber, but not in their order.    Numbers 2 and 9 are based upon
the claimed omissions of necessary averments in the declaration
to entitle the plaintiff to recover under the Federal Employers'
Liability statute.    In legal effect these are disposed of by our
holdings on the demurrer and on the grounds considered of the
motion in arrest of judgment, and need not be further noticed.

The grounds of numbers 4, 5, and 6 are that of contributory
negligence by the intestate.    Under the Federal statute, con-
tributory negligence by the servant does not defeat the action.
It affects the question of damages only.    By section 3, the fact
that the employee may have been guilty of contributory negli-
gence shall not bar a recovery, but the damages shall be dimin-
ished by the jury in proportion to the amount of negligence
attributable to such employee, as compared with the combined
negligence of himself and the employer.    *Norfolk & Western
Ry. Co.* v. *Earnest,* 229 U. S. 114, 57 L. ed. 1096.

Ground No. 10 is, that there is no evidence in the case show-
ing that the train upon which the intestate was killed to have
been engaged by the defendant in interstate commerce, nor that
at the time of the accident the intestate was employed in such
commerce.    Under the pleadings neither of these facts was in
issue.    They stood as judicial admissions by both parties, by
the defendant in its plea, by the plaintiff in her replication, and
thus they were outside the range of evidence  either to establish or

dispute.    Wig. Ev. §§1064, 2589; *Paige* v. *Willet,* 38 N. Y. 28;
*Tisdale* v. *President, etc. D. & H. Co.,* 116 N. Y. 416, 22 N. E. 700.

Ground No. 1 is, because upon all the evidence in the case
the plaintiff is not entitled to recover, and No. 3, because the
evidence shows the defendant free from fault.    The evidence
tended to show that previous to the night in question consider-
able trouble had been had with engine 708 by reason of its
frequent leaking of steam beyond that usually expected from
engines in proper condition, so much so that on several occasions
within a month before the accident, it had been booked for re-
pairs in this respect; that on the night in question it leaked
steam very badly about the steam chest and piston rods before
leaving White River Junction, so much so that the engineer
directed a brakeman to get onto the pilot of the engine to line
up the switches, he not being able to see them because of the
escaping steam; that after leaving White River Junction, the
escaping steam was so dense about and over the engine that a
person on the seat of the fireman or of the engineer in the cab
could not see forward by the engine, and that this condition con-
tinued all the way to the place of the accident; that because of
such escaping steam when the train left Randolph, and up to the
time of the collision, they could not see the tail lights of train
401, though the evidence tended to show they were all lighted,
and that the track was straight the last half of a mile or more.
Whether the engine's thus leaking steam was consequent upon
the defendant's neglect to keep it in suitable repair was a ques-
tion for the jury.    With this question answered in the affirma-
tive, such negligence was a proximate cause of the accident.
Again, the evidence tended to show that, owing to the difference
in the size of the wheels, engine 708 was faster than engine 401,
and so steadily and rapidly gained upon her the night in ques-
tion, that, with the delays of the latter, when train 708 stopped
at Bethel train 401 had not reached Randolph, 7.1 miles away.
It is said in *Louisville, etc. R. Co.* v. *Heck,* 151 Ind. 292, 50 N. E.
988, that "a railroad company is legally bound to know, and
therefore, in law, it does know, the whereabouts of all its trains,"
but in disposing of the case before us it is not necessary to con-
sider this presumption; for respecting the night of the collision
the evidence showed that the train dispatcher, through reports
required by the rules of the company to be given him promptly
by the telegraph operators at the different stations on defend-

ant's line of the time of arrival and departure of all trains, was informed of the positions of these two trains as they proceeded north from White River Junction to the place of the accident. Having such information, the train dispatcher knew that when 708 left Bethel 401 was less than 7.1 miles ahead, and he must have known that as the two trains were proceeding it was inevitable that the rear train would shortly overtake the other, unless steps were seasonably taken to prevent it; and being vice principal, his knowledge in these respects was the knowledge of the defendant.   Therefore it cannot be said as a matter of law that, in the circumstances shown by the evidence considered most strongly in favor of the plaintiff, including the inability of those in charge of the rear train to see ahead because of escaping steam, the defendant so dealt with the problem before it as not to expose the intestate to perils against which he might have been guarded by the exercise of the requisite degree of care on its part.    In the absence of any notice by the defendant at Bethel or Randolph to those in charge of train 708 concerning train 401, with such instructions as were reasonably calculated to prevent a collision, a jury might well say that the defendant did not take such care to protect the intestate from accident as the exigencies of the situation required.   *Sheehan* v. *New York C. & H. R. R. R. Co.,* 91 N. Y. 332.

The seventh and last ground of the motion: "Because the declaration states that the plaintiff's intestate was injured by a cause of injury unknown to him, that he did not know and comprehend the danger in which he was placed at the time he received his fatal injury, while the evidence does not show that, hence the plaintiff has fallen short of the allegations in his declaration in a vital and material matter." It is a sufficient answer to this to say that the bill of exceptions states that the plaintiff's evidence tended to show that during the trip the intestate had no notice or warning of any kind whatever that 708 was following; and the evidence, on examination, warrants this statement. The evidence further tended to show that train 401. was running at the time of the collision about twelve miles an hour, and that the speed of 708 was then from twenty-two to twenty-four miles an hour, while the average rate of speed for extra freight trains was from ten to fifteen miles an hour. The motion for a verdict was properly overruled.

. Defendant made twelve requests to charge. It excepted to the charge as follows: "For the failure of the court to charge as requested in original requests No. 1 to 12 inclusive, and for failure to charge. as requested in additional requests Nos. 1, 5, 6, 7, and 11, and the exceptions were allowed severally so far as the charge did not comply with said requests, and so far as said requests were material, and stated a correct proposition of law; because the court omitted to say," etc., particularly specifying certain omissions to charge, and parts of the charge given.

. These exceptions other than those particularly specified are too general for consideration. Those so specified will be considered in their order.

(1) "Because the court omitted to say, that if the jury found 708 defective, but that that defect was not the proximate cause of the injury, then the defective condition of 708 would be eliminated from the case." This exception cannot be sustained. We have already seen that the defective condition of that engine by way of leaking steam was one of the circumstances to be considered by the jury in determining whether the defendant was guilty of negligence in not notifying train 708 concerning train 401, with such orders as might reasonably be necessary to prevent a collision. Hence the defective condition of engine 708, though found not to be the proximate cause of the accident, would not by reason thereof necessarily be eliminated from the case.

(2) To what the court said, that "if the jury found that the defendant followed the rules, but there was a better way, then the defendant still might be negligent." This exception points to the latter part of the following paragraph in the charge:

"The defendant, as well as the plaintiff, has used as evidence in this case, some of the rules of the defendant company, tending to show that the defendant was following those rules at the time of the accident, and that those rules were such as were in general use by railroads throughout the country. They have been denominated in the course of the trial as general rules. If you find such to be the fact, that would be evidence tending to show that the defendant was operating the train at the time of the accident in a prudent manner, if you find that he (it) was following those rules and adhering to them, but if the conditions were such on the occasion of this accident that a prudent

man ought and would have foreseen the accident might and probably would happen, if those rules were followed, it would be negligence on the part of the defendant to follow them if there was any reasonable way in which to operate train No. 708 for it to avoid such accident.''

With the latter part of this portion of the charge the defendant has no reason to complain. It is held in an earlier part of this opinion that rule 221 was applicable to train 708 when it stopped at Bethel and that by the requirements thereof the clearance card given to that train should have been filled in to show the time when the next train ahead (No. 401) left Bethel and that it had not yet reached Randolph. By the undisputed evidence the clearance card was not so filled in. Consequently thenceforward the defendant, in operating train 708, was not following the rules and adhering to them.

(3) ''To what the court said when he said it was the plaintiff's duty to determine whether the train was making the speed required, whether the train was liable to be overtaken by another train, upon the ground that the rules are positive about that, and there was no room left for discretion under the circumstances on the part of the plaintiff's intestate.'' One of the defendant's requests to charge was, ''It was the duty of the plaintiff's intestate, under the rules in force at the time of the injury, to have flagged by means of torpedoes and fusees train 708 to prevent its colliding with 401 at Randolph and to have put out fusees at intervals between Randolph and the place of the accident. This he did not do.'' In charging upon this subject the court told the jury they were to determine what the duty of the intestate was for the protection of train 401, and this duty, as claimed by the defendant, was largely to be gathered from its rules. The court proceeding:

''Rule 36 provides as follows: 'A red or yellow fusee, as the case may require, will be used for the protection of a train which is not making the speed required by schedule or train order, and is liable to be overtaken by a following train.' We construe that rule to mean that it was the duty of the plaintiff's intestate, as rear brakeman of that train, to put out a fusee when certain conditions existed, and the rule being a command to him, that it was his duty to determine that question, that is, it was his duty to determine whether train 401 was making the speed required by the train order, as there was no schedule time, and

that also he was to determine whether it was liable to be overtaken by a following train. If the train was not making the speed required by the train order, and that train was liable to be overtaken by a following train, and he as a careful and prudent man ought to have known that, then it was his duty to put out fusees between Randolph and the place of the accident, but before he was called upon to do this, these conditions must have existed, that the train was not making the speed required by the train order and that he, as a prudent and careful man, knew or ought to have known that the train was liable to be overtaken by a following train.''

The effect of this charge was to place the responsibility of protecting the rear end of train 401 upon the intestate, if the train was not making the speed required by the order and was liable to be overtaken by a following train. So far the charge was in substantial compliance with defendant's request, and no exception was taken thereto. The further charge in connection therewith that the determination of whether such conditions as to speed of the train and liability of being overtaken by a following train as by the rule to require such protection, was with the intestate upon what he as a careful and prudent man knew or ought to have known, was but the legal consequence of the preceding part of the charge in accordance with defendant's request and not excepted to. The care and prudence of a careful and prudent man in like circumstances has so often been laid down as the rule of diligence required, that citation of authorities is unnecessary. It necessarily follows that with the latter part of the charge thus given the defendant can have no reasonable ground of complaint.

(4)  ''To the construction which the court placed upon rule 99, wherein the court said, 'If a train is stopped and delayed on the main line,' '' and ''to what the court said about rule 99, because the rule conveys the fact that when a train is stopped on the main line it is an absolute duty under all circumstances for the flagman to protect his rear by fusees and torpedoes.'' Following the taking of these exceptions, the court gave a supplemental charge on the same subject, to which no exception was saved, thus curing the defect, if any there was, in the original charge.

(5)  ''To the charge of the court where it said in substance that plaintiff's intestate claims that the defendant had no right

to run engine 708 in the condition it was, if the jury so found she would be entitled to recover." The part of the charge to which this refers was:

"The plaintiff claims that her intestate did all on that occasion that his duties under the rules and under his employment required, but that because of the negligence of the defendant, as claimed by her, this accident occurred and her intestate lost his life. She claims further that although you (the jury) might find that the defendant was following these rules on the occasion in question, that because of the condition of engine No. 708, the defendant had no right to run train No. 708 as it did run it, and that it had no right to follow those rules in view of the condition of engine No. 708 leaking steam as she claims it did. If she has made out those claims by a fair balance of the evidence, and the claims which she makes before you, then she is entitled to recover although you may find that her intestate was also negligent and that that negligence contributed to his death."

It is said in defendant's brief that there was no further charge with reference to proximate and remote cause. Considering this part of the charge, as it should be, in connection with what the court had already instructed the jury, it is not subject to the criticism made. The court had previously charged that in order for the plaintiff to recover, not only must she establish that the defendant was negligent, but she must also establish that the negligence proximately contributed to the death of her intestate, or was the proximate cause of it; that the burden was upon her to make out a cause of action against the defendant; that "She claims that the defendant was negligent in the operation of train drawn by engine No. 708," etc.; that it was the duty which the defendant owed to the intestate and all the other employees on train 401, to operate train 708 in a careful and prudent manner, as it would have been managed by a careful and prudent man, so as not to do injury to its servants on train 401; that it was not enough to prove that the accident happened, but the question for the jury to determine was whether the defendant was negligent, and whether that negligence proximately contributed to the death of the intestate, or was the proximate cause of it. Then follows:

"The plaintiff claims that the negligence of the defendant, which caused the death of her intestate, was the running of train No. 708 with its defective engine; that it never should have run

23

that train from the station at White River Junction; that it was negligent in that it did not give such warning to train No. 708 and train 401 as it ought to have given in the circumstances of the case, in consideration of the condition of engine No. 708; that engine No. 708 was not in proper condition and was not suitably and properly equipped, and to recover in this suit, she must make out this negligence which she claims.''

In giving the part of the charge complained of, it was not necessary for the court to repeat in detail all the elements it had before stated as necessary for the plaintiff to establish in order to entitle her to recover, and particularly so, since the negligence claimed by the plaintiff regarding the defective condition of engine 708, and the running of her in such defective condition, was alluded to by the court in connection therewith. There is not the slightest ground for doubt that the court intended that the portion of the charge of which complaint is here made, should be considered in connection with that which had gone before, as above indicated, nor is there any doubt that the jury so understood it.    The exception is not sustained.

(6)  ''To the failure of the court to charge about the contingencies of illness and loss or impairment during the period of life, and also the contingency of death prior to the time limit of expectation.''   Evidence was introduced showing the intestate's age at death, his previous condition of health, his habits, earning capacity, etc., together with the expectancy of life of a man of his age, according to the American Experience Table of Mortality.   On the question of damages the court charged, among other things, as follows: ''In determining what he (intestate) is worth to the family, you should consider his actual earning power, and you should take into consideration his power to earn for the length of time that he may be expected to live,'' etc.   Thus under the charge the jury were to consider the intestate's earning power during the term of life expectancy, which consideration involved the probabilities as to his health and physical condition.   We think the charge was sufficiently explicit in this respect.   See *Baltimore, etc. R. R.* v. *Wightman's Admr.*, before cited.

(7)  ''To the charge that the burden was on the defendant to show that the intestate was negligent in not depositing torpedoes and fusees in rear of his train.''   The portion of the charge here challenged was in effect that on the question of the

intestate's contributory negligence the burden of proof is with the defendant. It is said by defendant that under our holdings it devolved upon the plaintiff to show the intestate free from fault. There can be no question but that the rule in this State in actions for negligence based upon State law is as stated by the defendant. This case, however, is brought upon an Act of Congress regulating the liability of employers engaged in interstate or foreign commerce for injuries received by their employees while engaged in such commerce, and it supersedes the laws of the State in so far as the latter cover the same field. *Mondou* v. *New York, N. H. & H. R. Co.,* cited above. Consequently the question of the burden of proof respecting contributory negligence on the part of the injured employee is to be determined according to the provisions of that Act, and the declaration of the Supreme Court of the United States thereon controls. In *Seaboard Air Line Ry.* v. *Moore,* 113 C. C. A. 668, 193 Fed. 1022, this burden was charged to be with the defendant, and on writ of error the judgment was affirmed by the Supreme Court of the United States. Same case, 228 U. S. 433, 57 L. ed. 907.

As another assignment in its motion in arrest why the judgment should be arrested, the defendant says that some of the counts of the declaration are defective in not alleging lack of knowledge by the intestate of the various grounds of negligence and items of carelessness on the part of the defendant, alleged as constituting the cause of action, the verdict of the jury being general. Assuming some of the counts to be thus defective, it is not a ground for arresting the judgment. The statute expressly provides that if a declaration contains defective counts and also good counts for the same cause of action, the verdict shall be deemed the finding of the jury on the good counts, unless it otherwise appears; and judgment shall be given according to the right of the cause and the matters in law, without regard to the imperfections or defects in other counts. P. S. 1505; *Varnum* v. *Highgate,* 65 Vt. 416, 26 Atl. 628.

This in effect disposes of all questions within the exceptions and stated as points to be discussed in defendant's brief.

*Judgment affirmed.*