### 9093

### KOENNECKE v. SEABOARD AIR LINE RAILWAY.

#### (85 S. E. 374.)

MASTER AND SERVANT. FEDERAL EMPLOYERS' LIABILITY ACT. PRACTICE. PLEADINGS. AMENDMENT. NEGLIGENCE. YARD EMPLOYEES. NON-SUIT. APPEAL AND ERROR. CHARGE.

1. MASTER AND SERVANT—FEDERAL EMPLOYERS' LIABILITY ACT—AMENDMENT OF PLEADINGS.—Where in an action under Lord Campbell's Act Civil Code 1912, secs. 3955 and 3956), the defendant on cross-examination of plaintiff's witness brought out testimony, without objection, which tended to show, that the plaintiff's intestate, a railroad employee, was at the time of his death engaged in interstate commerce, the plaintiff was properly permitted to amend the com-

plaint by alleging these facts, which brought the action under the Federal Employers' Liability Act.

2. PLEADINGS—AMENDMENTS.—Amendments to pleadings are within the discretion of the trial Court, and may be allowed even during the trial, when they do not so materially change the claim or defense, as to result in prejudice to the adverse party; and the party resisting the motion to amend, must show by affidavit, or otherwise to the satisfaction of the Court, that he would be misled or surprised thereby to his prejudice.

3. MASTER AND SERVANT—NATURE OF EMPLOYMENT.—A railroad company must be presumed to know the nature of its employee's employment; and should not be permitted to withhold information with reference thereto, until the trial is in progress, and then without having plead the facts, show them to the prejudice of the plaintiff.

4. MASTER AND SERVANT—ACTIONS.—May not causes of action under the State law and also under the Federal Employers' Liability Act for the same cause of action be joined in the complaint, and tried under the law, which the proof shows to be applicable?

5. NONSUIT—NEGLIGENCE.—Where there is testimony tending to support some of the specifications of negligence in complaint, the direction of a verdict for defendant is properly refused.

6. CHARGE—APPEAL AND ERROR—HARMLESS ERROR.—Where there was evidence that the headlight of an engine working in a railroad yard was not lighted, and that a proper outlook was not kept, the refusal of a request to charge that there was no evidence of negligence in that the train consisted of more than 12 cars, or in that the engine was backing and pulling the train, was not prejudicial error.

7. RAILROADS—YARDS.—Where the evidence showed that a switch engine, regularly employed in another yard, had just arrived, when it might not have been expected, in a yard where plaintiff's intestate was employed, a request to charge which assumed that the engine crew owed no duty to the deceased, requiring it to give signals of its approach, was properly refused.

8. RAILROADS—OPERATION—NEGLIGENCE.—Though a rule which forbade the moving of engines or cars backward without lookout was applicable only on the main line, it was admissible in evidence when it was a question for the jury whether or not the movement on the main line, although within the yard, had been completed, when the injury in question occurred.

Before Hon. W. A. HOLMAN, special Judge, Columbia, May, 1914.   Affirmed.

Action by Mrs. Beauregard Magdalene Koennecke, as administratrix of the estate of J. T. Koennecke, deceased,

against Seaboard Air Line Railway. From a judgment for plaintiff, defendant appeals on the following exceptions:

1. Because his Honor erred in allowing plaintiff, over defendant's objection, during the trial of the case and following the examination of plaintiff's witness, T. A. Barker, to amend her complaint and in granting an order to this effect, as follows:

"Ordered, 1. That paragraph two of the complaint be, and the same is hereby, amended by adding after the word 'Railway,' on line seven of the complaint, the words 'from the city of Hamlet, in North Carolina, to the city of Savannah, Georgia, through the States of North Carolina, South Carolina and Georgia.'

"2. That the complaint be amended in paragraph three by adding after the words 'South Carolina,' on the last line of said paragraph, the words 'and was engaged in switching cars, making up and breaking up trains running and operating between Columbia, in the State of South Carolina, and Hamlet, in the State of North Carolina, and between Columbia, in the State of South Carolina, and Savannah, in the State of Georgia, the said trains carrying freight between these points.'"

The error being:

a. That his Honor should have sustained defendant's objection that such so-called amendment was beyond his Honor's power, because it changed substantially plaintiff's claim and amounted to the insertion, by way of the so-called amendment, of a totally new and distinct cause of action.

b. His Honor having correctly ruled that the act of Congress, known as the Federal Employers' Liability Act, entirely superseded the South Carolina Lord Campbell's Act, "where the party was engaged at the time in interstate business," and having further correctly ruled that "when it comes down to a death action (the Federal act) absolutely supersedes the State law, and gives a new cause of action by the personal representative for the benefit of all parties

dependent upon him for support," and having further correctly ruled that under the Federal act no punitive damages could be recovered, while punitive damages were alleged and claimed under this original complaint, and having further correctly sustained defendant's counsel's objection that his Honor had no power under the practice of this State to grant such a motion to amend, and having told counsel for defendant that he did not care to hear further ·from counsel on that point, correctly ruling: "That is substantially an entirely different cause of action—you can amend during the trial, provided it does not substantially change the cause of action, and you will have to do that. You cannot stand on this complaint as it is now; it is an entirely different action. During the trial of a case the Judge cannot substitute an entirely different action. As Mr. Lyles says, it is as different as anything could be; it is an entirely different cause of action. I would not have jurisdiction to do that." And further correctly ruling: "Let me suggest to you, this is not an amendment—you cannot amend a suit brought under Lord Campbell's Act, so as to bring it under the act of Congress. When an action is brought under the State statute, and the other under the Federal statute, that is substituting an absolutely different action. Your suit is brought technically under Lord Campbell's Act."

His Honor then erred in changing such correct rulings and conclusions and in erroneously concluding: "Since hearing argument, I am satisfied that the State, having complete control over the whole matter—pleadings—would have the right to allow the amendment." And on these grounds his Honor erred in ruling and concluding that he had the power to grant the amendment, and erred in granting the order allowing ·the amendment.

c. That there was no evidence before the Court permitting the inference that plaintiff's intestate was employed by defendant in interstate commerce at the time of his injury and death, and the amendment was not permissible, there-

fore, to conform the complaint to the facts proved, which was the ground upon which it was allowed.

2. That his Honor erred in ruling, during the argument on the motion of plaintiff to be allowed to amend her complaint, that testimony had been developed tending to show that plaintiff's intestate was engaged in interstate commerce at the time of his injury and death, and that the question was whether the complaint could be amended to conform to this testimony.

The error being that there was no testimony admitting of the inference that plaintiff's intestate was so employed.

3. That his Honor having concluded that he had the power to grant the amendment requested by plaintiff, erred in exercising his discretion in favor of the plaintiff by granting the amendment, and in so doing abused his discretion. The abuse and erroneous exercise of discretion being that it appeared that plaintiff had had ample opportunity before the trial of the case to discover the facts, claimed to have been developed on the trial from her own witness, and her attorneys having full knowledge, actual or presumptive, of the difference between an action under the Lord Campbell's Act of this State and the Federal Employers' Liability Act, had ample opportunity, before the trial, to discover the true facts, and consequently, the statute and rule of law governing, since they well knew that plaintiff had the election as to which statute the action should be brought under, and, therefore, plaintiff and her attorneys having had the opportunity to discover the facts before the trial, and being under a duty so to do, there was no emergency or surprise on the part of the plaintiff that justified his Honor in allowing the amendment during the trial and without notice to defendant.

4. That his Honor having concluded that he had the power to grant the amendment, and having so ruled, and having further ruled that if counsel for defendant should say that defendant could not go to trial and that defendant

was taken by surprise, his Honor would not force defendant to trial, and after considerable argument, his Honor, having asked defendant's counsel this specific question: "Do you say, Mr. Lyles, that you are taken by surprise; if so, I don't think I ought to force you. I have decided I have the power, and I think the amendment ought to be allowed, and the case ought to proceed, unless you say, on account of the change, you will be taken by surprise." And counsel for defendant having replied: "If your Honor requires me to speak, I will be careful in what I say. I cannot say I am not familiar with the Federal Employers' Liability Act of Congress. I am not prepared to meet the issue this change of dependency will bring out." And counsel for defendant having further explained that defendant was not prepared to meet the very material issue of the dependency of the beneficiaries of plaintiff's intestate made issuable for the first time by the amendment, and that defendant could not safely go to trial without reasonable opportunity to prepare to meet such issue, on which defendant was not prepared and was taken by surprise, and his Honor having then ruled and defendant's counsel replied as follows:

"The Court: I told you if you are not ready to go to trial in this case, I will not force you.

"Mr. Lyles: I am not ready to go to trial. I am not ready to meet the issue of dependency."

And defendant's counsel having further explained and protested against proceeding, his Honor erred in ruling and ordering:

"The Court: Proceed with the trial of the case. Counsel ought to have known that this question would come up anyway."

And erred in requiring defendant to proceed with the trial.

The error being:

a. That defendant had a legal right to a reasonable opportunity to prepare to meet the very material issue of depend-

ency which was brought into the case for the first time by the so-called amendment bringing the case under the Federal act, and having made that fact appear to the Court in the manner required by the Court, and having protested to the Court in the manner required its unpreparedness to proceed with the trial, and having presented to the Court defendant's demand for a postponement of the trial under the so-called amended complaint, it was error of law for his Honor to deprive defendant of this legal right by forcing it to continue the trial.

b. That such procedure deprived defendant of its property without due process of law and denied to defendant the equal protection of the laws, in violation of the Fourteenth Amendment of the Constitution of the United States, and art. I, sec. 5 of the Constitution of South Carolina, in that such procedure suffered and caused a judgment to be rendered against the defendant on a pleading or proceeding of which defendant had no notice and no opportunity to answer and define the issues and no opportunity to prepare to meet the material issues raised thereby.

c. That it was an abuse of discretion for his Honor to force defendant to proceed with the trial under the so-called amended complaint after the statements and protests of defendant's counsel that it was not prepared to do so and would be materially and seriously prejudiced by so doing.

5. That his Honor erred in ruling as follows:

"The Court: Proceed with the trial of the case. Counsel ought to have known that this question would come up anyway.

"Mr. Lyles: I do not want to get on the record wrong.

"The Court: You had the opportunity to continue the case, and would not avail yourself of it; it is not my fault. I left it in your hands, and you would not avail yourself of it. I was going to continue the case, if you had said, under the circumstances, you could not go to trial."

The error being that defendant's counsel had availed himself of the opportunity to continue the case in the manner required by his Honor and had explicitly and repeatedly stated to the Court that defendant was not ready to proceed with the trial, had protested against being forced so to do and had explained to the Court at length the reasons why defendant's material rights would be prejudiced; and defendant had availed itself of the opportunity given by his Honor and had met the test required by his Honor for continuing the case, and had explicitly stated that, under the circumstances, it could not go to trial; and his Honor in this ruling and in forcing defendant to trial disregarded and overruled the very tests set by himself for a continuance.

6. That his Honor erred in refusing defendant's motion for a nonsuit, made during the argument on the motion of plaintiff to amend her complaint, as follows:

"Mr. Lyles: If your Honor rules you have the power to make the amendment, before we get to the question whether you are going to grant it or not, I submit I am entitled to a nonsuit in the case, on the question of power. We are entitled to go forward with this trial on the pleadings as they now stand; and if they are not going forward, I think I am entitled to a nonsuit as the case now stands. That is to keep this record straight on the question of power to grant the amendment. I am convinced the Court has no power to grant it."

. The error being that plaintiff having announced that she would not proceed with the trial on the complaint, as it stood, it was beyond the power of his Honor to allow the amendment moved for by plaintiff, substantially changing plaintiff's claim and inserting in the complaint a new and distinct cause of action, and since plaintiff had announced that she would not proceed on her complaint as it then stood, the only solution was to nonsuit the case without prejudice to what further action plaintiff might subsequently institute.

7. Because his Honor erred in refusing to direct a verdict for defendant, for the reasons stated by defendant in its second ground, as follows:

"2. Because from the entire evidence the inference cannot be drawn that plaintiff's intestate was employed in interstate commerce at the time he received his injuries resulting in death."

8. Because his Honor erred in refusing to direct a verdict for defendant, for the reasons stated by defendant in its third ground, as follows:

"3. Because plaintiff has failed to sustain the burden of proof resting upon her, by adducing evidence, from which the reasonable inference can be drawn that plaintiff's intestate was employed in interstate commerce at the time he received the injuries resulting in death."

9. Because his Honor erred in refusing to direct a verdict for defendant, for the reasons stated by defendant in its fourth ground, as follows:

"4. Because the entire evidence does not admit of the inference that the defendant was guilty of negligence in any of the particulars alleged in the complaint which proximately caused or resulted in the injuries and death of plaintiff's intestate."

10. Because his Honor erred in refusing to direct a verdict for defendant, for the reasons stated by defendant in its fifth ground, as follows:

"5. Because the only reasonable inference which can be drawn from the entire evidence is that the injuries and death of plaintiff's intestate were proximately caused by his own negligence and not by any negligence on the part of the defendant in the particulars alleged in the complaint."

11. Because his Honor erred in refusing to direct a verdict for defendant, for the reasons stated by defendant in its sixth ground, as follows:

"6. Because the only inference to be drawn from the entire evidence is that plaintiff's intestate assumed the risks

of the dangers and defects which caused his injuries resulting in death."

12. Because his Honor erred in refusing to direct a verdict for defendant, for the reasons stated by defendant in its seventh ground, as follows:

"7. Because the only allegation of a violation of duty on the part of the defendant as master, toward the plaintiff's intestate as an employee in interstate commerce, which the evidence tends to support, is the failure to furnish plaintiff's intestate with a safe place to work, in that the tracks and walkways between the tracks were in a dangerous and unsafe condition by reason of piles of clinkers, cinders and coupling pins, and the entire evidence admits only of the inference that plaintiff's intestate waived the duty of the defendant as master in this particular and assumed the risk of the defects and dangers therefrom in this regard."

13. Because, on the motion for the direction of a verdict, his Honor, having ruled that he was not satisfied as to the disposition of the motion, and having plainly indicated his serious doubt as to whether the plaintiff had offered any evidence which entitled plaintiff to have the case submitted to the jury, his Honor then erred in solving such doubt by casting upon the defendant the burden of carrying the case to the Supreme Court; whereas, since plaintiff bore the burden of proof in the cause and the burden of establishing her case under the law, his Honor should have solved such doubt in favor of the defendant, and cast upon plaintiff the burden of appealing the case to the Supreme Court.

14. Because his Honor refused defendant's second request to charge, as follows:

"2. There is no evidence tending to sustain the allegation that there were no lights in the yard, adequate for the proper protection of plaintiff's intestate in the performance of his duties, or tending to show that the negligence of the defendant in this particular was a proximate cause of the injuries

and death of plaintiff's intestate, and the jury cannot consider this allegation of the complaint."

The error being that there was no evidence to support the allegation of the complaint in said request referred to, and the defendant was entitled to have the jury so instructed.

15. Because his Honor refused defendant's fourth request to charge, as follows:

"4. There is no evidence to support the allegation that the defendant was negligent, in that the train which ran over and killed plaintiff's intestate consisted of an engine and a great number of box cars, to the amount of more than twelve, or that such negligence was a proximate cause of the injuries and death of plaintiff's intestate, and the jury cannot consider this allegation of the complaint."

The error being that there was no evidence to support the allegation of the complaint in said request referred to, and the defendant was entitled to have the jury so instructed.

16. Because his Honor refused defendant's fifth request to charge, as follows:

"5. There is no evidence of negligence on the part of the defendant, in that the engine was backing, with the tender in front pulling the box cars behind, and no evidence that this was a proximate cause of the injuries and death of plaintiff's intestate, and the jury cannot consider this allegation of the complaint."

The error being that there was no evidence to support the allegation of the complaint in said request referred to, and the defendant was entitled to have the jury so instructed.

17. Because his Honor refused defendant's sixth request to charge, as follows:

"6. There is no evidence that the defendant was negligent, in that no lookout was kept by the agents of the defendant on the engine which ran over plaintiff's intestate and no evidence that such negligence was a proximate cause of the injuries and death of plaintiff's intestate, and the jury cannot consider this allegation of the complaint."

The error being that there was no evidence to support the allegation of the complaint in said request referred to, and the defendant was entitled to have the jury so instructed.

18. Because his Honor refused defendant's seventh request to charge, as follows:

"7. There is no evidence of negligence on the part of the defendant in failing to have an employee on the rear of the engine which it is claimed ran over plaintiff's intestate, since the entire evidence shows that this was a switch engine, in yard service at the time and not moving on the main line, and there is no evidence that such negligence was a proximate cause of the injuries and death of plaintiff's intestate, and the jury cannot consider such allegations of the complaint."

The error being that there was no evidence to support the allegation of the complaint in said request referred to, and the defendant was entitled to have the jury so instructed.

19. Because his Honor charged the jury as follows:

"In this case, in the 6th paragraph of the complaint, the plaintiff specifies the grounds of negligence which she charges against the defendant and which she claims caused the death of her husband. Now, she has got to stand upon the allegations as made in this complaint. If a party makes a number of specifications of negligence, they are not bound to prove all of the specifications, but they must prove some one or more sufficient to entitle them to recover before the jury. But I say the case must be tried upon the allegations as made in this complaint; and it is stated thus: In failing to give the proper warning of the approaching train; in failing to keep a proper lookout and in failing to keep an employee on the rear of the engine, as aforesaid; and by reason of said negligent, careless, wanton and reckless acts the plaintiff's intestate was killed in the performance of his duties, as aforesaid. They allege, also, in failing to furnish adequate lights for his protection; in having the track and walkways

between the tracks in a dangerous and unsafe condition, as aforesaid."

The error being that there was no evidence of negligence on the part of the defendant, operating as a proximate cause of the injuries and death of plaintiff's intestate, in the following particulars:

a. In failing to give the proper warning of the approaching train.

b. In failing to keep a proper lookout and in failing to keep an employee on the rear of the engine.

c. In failing to furnish adequate lights for his protection.

d. In having the track and walkways between the tracks in a dangerous and unsafe condition.

And the defendant having specifically requested his Honor to eliminate each one of these issues from the jury by charging the jury that there was no evidence to support them, it was error for his Honor to submit these issues to the jury.

20. Because his Honor refused defendant's eighth request, as follows:

"8. It is not the duty of the crew of a switching engine moving through switching yards to ring the bell or give other signals for the benefit of an employee whose duties require him to work in the yards and who knows, or by the exercise of ordinary care could know, that switching engines were constantly moving through the yards, and who should reasonably anticipate and expect the engine in question, it being the duty of such employee to be on the lookout for the switching engine and not the duty of the crew of the switching engine to be on the lookout for the employee."

The error being that this was a correct proposition of law to enable the jury to determine the issues of fact submitted to them according to law, and should have been charged.

21. That his Honor erred, as a matter of law, in refusing the defendant's motion for a new trial, for the reasons set forth in its first ground of such motion, as follows:

"1. Because his Honor having charged the defendant's third request, as follows:

" '3. There is no evidence to show that the failure of the defendant to have the tracks and the walkways between the tracks in a safe and proper condition was a proximate cause of plaintiff's intestate's injuries and death, and the jury cannot consider this allegation of the complaint.'

"And this having eliminated from the consideration of the jury the violation of any duty on the part of the defendant to plaintiff's intestate in having the tracks and walkways, etc., in an improper and unsafe condition, there was no evidence of any other violation of duty or negligence on the part of the defendant proximately resulting in injury and death to plaintiff's intestate, and the verdict must be set aside as a matter of law."

22. That his Honor abused his discretion in refusing to grant the defendant a new trial upon the grounds that the verdict was excessive and that the jury had failed to reduce the damages in proportion to the negligence of plaintiff's intestate, as set forth in defendant's second and third grounds of its motion for a new trial, as follows:

"2. Because the verdict is greatly excessive under the evidence according to the rule of damages applicable under the Federal Employers' Liability Act."

"3. Because the clear preponderance of the testimony admitted only of the inference that plaintiff's intestate was guilty of contributory negligence, and from the size of the verdict it is apparent that the jury did not discharge its duty of reducing the damages in proportion to the negligence of plaintiff's intestate."

23. That his Honor abused his discretion in refusing to reduce the verdict by way of a new trial *nisi* upon the grounds and for the reasons set forth by defendant in its motion, as follows:

"The defendant also asks for a reduction of the verdict by way of a new trial *nisi* upon the grounds:

"1. That the verdict is excessive under the rule of damages applicable under the Federal act; and,

"2. Because the clear preponderance of the testimony admitted only of the inference that plaintiff's intestate was guilty of contributory negligence and the jury did not discharge its duty of reducing the damages in proportion to such contributory negligence."

24. That his Honor erred in ruling as follows on the motion of the defendant for the direction of a verdict:

"The Court: You need not point out all the acts of negli-gence. If you prove any one act of negligence will be sufficient to sustain it. They say rule U does not apply to train running from Columbia to Cayce and stopping on that track and unhitching engine, and getting other cars and bringing them back. That is one act of negligence the jury will have to decide. They say it does not apply to the movement in the yard, movement from Columbia to Cayce. It was their business under the rule of the company to have a man on the back of the train when they started from Columbia, and it was his business to be there when they arrived at Cayce, he had no right to jump off and leave the car without guarding against running over people."

The error being that the entire evidence admitted only of the inference that rule U did not apply to the engine and cars which killed plaintiff's intestate, as they were switching in the yard, off of the main line. And, further, that the entire evidence did not admit of the inference that it was the business of defendant, either under said rule or under the law governing the cause, to have a man on the back of the train or engine which killed plaintiff's intestate to look out for or warn plaintiff's intestate, an employee in the switching yard.

25. Because his Honor erred in admitting, over the objection of the defendant, on the examination of plaintiff's witness, Barker, and on the cross-examination of defendant's witness, Thornton, certain rules and more particularly, rule

U, found in the so-called time table of the defendant company, and in allowing said rule to be read to the jury, as follows:

"Cars will not be moved in front of engine, or engine moved backward, unless there is an employee on the front of the moving car, or in the rear of the engine, to keep a lookout, in the direction the movement is being made, to avoid striking persons or obstructions on track. Enginemen, as well as conductors, will be held responsible for violation of this rule."

The error being that the rule was irrelevant and had no application to the engine or cars that injured plaintiff's intestate, because such engine and cars were engaged exclusively in switching service in the yard, off of the main line of the defendant and were not subject to any of the rules or regulations contained in said time table, which applied only to trains in service on the main line of the defendant, and the admission of the said rule was prejudicial in that it erroneously led the jury to believe such rule required an employee to be on the rear end of the engine to keep a lookout in the direction a movement was being made, to avoid striking persons, even though such engine was off of the main line and engaged exclusively in switching service in the yard.

26. Because his Honor erred in admitting, over defendant's objection, two small kodak pictures claimed to have been taken by the plaintiff's witness, J. F. Koennecke, defendant's objection thereto being as follows:

"Mr. Lyles: I do not think those pictures are competent. Not identified here as the place where Mr. Koennecke was killed.

"The Court: He said it was pointed out to him.

"Mr. Cobb: He said he saw the blood there.

"Mr. Lyles: You have to identify a thing before you put it in evidence, cannot put it in by information given by other

people. The pictures are small kodak pictures—almost impossible to tell anything from them." ·

The error being that the photographs were so small, obscure and indefinite that it was impossible to ascertain from them any correct idea of the condition of the yard at the point where plaintiff's intestate was struck, and they were not properly identified as correct photographs of the locus.

*Messrs. Lyles & Lyles,* for appellants, submit: *The question of negligence under the Federal Act is to be determined by the uniform rule applicable in Federal Courts:* 223 U. S. 1; 79 S. E. 710; 1 Black (U. S.) 374; 144 U. S. 311; 181 U. S. 92. *South Carolina doctrine as to duty owed yard employees:* 90 S. C. 459; 93 S. C. 263. *Rule in other common law jurisdictions:* 83 S. E. 54. *Uniform rule in Federal Courts:* 145 U. S. 418; 122 U. S. 194; 144 Fed. 56; 75 C. C. A. 214; 201 Fed. 54; 119 C. C. A. 392; 47 L. R. A. (N. S.) 867, and note. *Charge:* 56 S. C. 373. *There was no evidence to show negligence:* 15 S. C. 96; 29 S. C. 161; 62 S. C. 15; 66 S. C. 22; 81 S. C. 552; 88 S. C. 222. *The failure of proof was called to the attention of the Court:* 72 S. C. 361; 74 S. C. 102, 135; 80 S. C. 407. *Cause of accident was purely conjectural:* 72 S. C. 398; 179 U. S. 658. *No evidence that intestate was employed in interstate commerce at time of his death:* 225 U. S. 477-482. *No evidence of negligence:* 16 S. C. 1; 96 S. C. 237. *Or cause of accident:* 72 S. C. 398; 179 U. S. 658. *Assumption of risks:* 109 U. S. 478; 122 U. S. 194; 138 Fed. 725. *Negligence of intestate:* 94 Fed. 946. *Excessive verdict:* 96 S. C. 278; 81 S. C. 32. *As to pleadings: Amendment substantially charged the plaintiff's claim:* 54 S. C. 492; 60 S. C. 401; 70 S. C. 279. *Damages recoverable under State statute:* 76 S. C. 278; *Ib.* 380; 29 S. C. 303; 47 S. C. 375; 53 S. C. 458; 70 S. C. 279; 77 S. C. 319. *Amendment under State statute:* 32 S. C. 142. *Federal act creates a*

*new cause of action:* 223 U. S. 1; 227 U. S. 59; 82 S. E. 415. *Right of beneficiaries under Federal statute:* 228 U. S. 173; 224 Fed. 547; 227 U. S. 234; 229 U. S. 161; 228 U. S. 702; 168 S. W. 250. *Jurisdictional facts under Federal act:* 225 U. S. 477-482. *Substantial change of cause of action not permissible:* Code Civil Proc. 224; 32 S. C 142; 49 S. C. 513; 80 S. C. 123; 81 S. C. 574; 82 S. C. 405; 86 S. C. 98. *Abuse of discretion in allowing amendment:* 82 S. C. 1; 83 S. E. 575; 47 S. C. 498. *Error to force defendant to trial:* 55 S. C. 90-98; 51 S. C. 415; 86 S. C. 98; 92 S. C. 297; 51 S. C. 412. *Absence of due process of law:* 18 How. 272. *Issue of dependency not material under State statute:* 76 S. C. 183; 81 S. C. 213.

*Messrs. F. G. Tompkins, W. H. Cobb* and *C. S. Monteith,* for respondent, submit: *Amendment was allowable.* 91 S. C. 559; 93 S. C. 76; 51 S. C. 412; 92 S. C. 297; 87 S. C. 240; 81 S. C. 574; 91 S. C. 55; 226 U. S. 570; 234 U S. 86. *Presumption that one knows which law is applicable to facts:* 223 U. S. 1; 226 U. S. 570; Richey on Employers' Liability Act, p. 61; 233 U. S. 42; 225 U. S. 477; 98 S. C. 197. *Evidence permissible of inference that intestate was at the time of his death engaged in interstate commerce:* 229 U. S. 156; 229 U. S. 146; 97 S. C. 50. *Dependency was an issue under State law:* 76 S. C. 183. *Defendant proceeding with trial:* 96 S. C. 346. *Request to charge as to duty owed yard employees properly refused:* 90 S. C. 459; 93 S. C. 263; 98 S. C. 348; 145 U. S. 418; 228 U. S. 319. *Rule as to negligence:* 98· S. C. 349; 191 U. S. 64. *Questions for jury:* 191 U. S. 64; 233 U. S. 80; 228 U. S. 433. *Jury correctly charged:* 227 U. S. 59; 233 U. S. 80; 233 U. S. 42; Richey, Employers' Liability Act, pp. 39, 40.

May 4, 1915.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Plaintiff brought this action to recover damages for the alleged wrongful killing of her intestate by the defendant. The complaint states a cause of action under the State statute. There is no allegation that, at the time he was killed, deceased was employed in interstate commerce, or that defendant was engaged in such commerce. Nor are any facts alleged from which, by reasonable intendment, such employment or engagement can be inferred. Nor does defendant set up in its answer any facts which directly, or by reasonable intendment, bring the case under the Federal statute. The allegation of the complaint that deceased left a widow and four children, who were dependent upon him, is appropriate to an action under the Federal statute, and while the allegation of dependency is not strictly necessary, it is not wholly inappropriate to an action under the State statute; because damages recoverable under the State statute are such as the jury "may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought." *Barksdale* v. *Ry.,* 76 S. C. 183, 56 S. E. 906.

Therefore, as neither plaintiff nor defendant set up or claimed any right or immunity under the Federal statute, there would have been no error, if all evidence tending to prove facts sufficient to bring the case under that statute had been excluded. *Mims* v. *R. Co.,* Mss. *ante,* filed April 3, 1915, 100 S. C. 375, 85 S. E. 372. That such right or immunity must be specially set up or claimed *at the proper time and in the proper way* cannot be controverted. *Oxley Stove Co.* v. *Butler Co.,* 166 U. S. 648, 17 Sup. Ct. 709.

But, on cross-examination of one of plaintiff's witnesses, defendant brought out testimony, without objection, which tended to prove facts sufficient to bring the case under the Federal statute. So long as that testimony remained in the record, either side had the right to claim the benefit of the Federal statute, even without amendment of the complaint or answer. *Toledo etc. R. Co.* v.

*Slavin,* 236 U. S. 454, 35 Sup. Ct. Rep. 306. But, when that testimony came out, plaintiff moved to amend her complaint by alleging facts to bring the case under the Federal law, and her motion was granted. Defendant resisted the motion to amend on the ground that the amendment would substantially change the plaintiff's claim by substituting one cause of action for another, and denied the power of the Court to grant such an amendment. Strictly and very technically speaking, it may be that the amendment substituted one cause of action for another; though it would, perhaps, be more nearly correct to say that the *cause of action* is the same, whether the *action* be brought and tried under the State or Federal law; and, since the principal differences between an action under the State and Federal law lie in the authority by which the right of action is given and in some of the rules of law applicable in the determination of the rights of the parties, they relate to form and procedure rather than to substance. So that it could rarely happen that a shifting from one to the other would work prejudicial surprise. But if the parties have not been previously warned by the pleadings that such shifting might take place, and if it should be made to appear that it would be a surprise and operate to cut off a claim or defense which could otherwise have been made, the Court would either not allow it, or allow it upon such terms as would prevent prejudice.

In *Missouri etc. R. Co.* v. *Wulf,* 226 U. S. 570, Ann Cas. 1914b, 134, 33 Sup. Ct. 135, plaintiff brought action in her individual capacity under the State law for damages for the death of her son. Defendant alleged that, at the time of his injury and death, deceased was employed and defendant engaged in interstate commerce. Thereafter, plaintiff was appointed administratrix of her son's estate, and was allowed to amend her petition by making herself a party plaintiff, as administratrix, and by alleging a cause of action both under the State and Federal law. She recovered under the Federal law. There, as here, the contention was

made that, by the amendment, the plaintiff was allowed to substitute a new and entirely different cause of action. But the Court overruled that contention, and held that the change was in form rather than in substance and it was not equivalent to the commencement of a new action, so as to render it subject to the two years' limitation prescribed by the Federal act. The Court said: "It introduced no new or different cause of action, nor did it set up any different state of facts as the grounds of action, and, therefore, it related back to the beginning of the suit."

The amendment allowed in the case at bar was clearly within the power and discretion of the Court. Such an amendment may be allowed even during the trial, when it does not so materially change the claim or defense as to result in prejudice to the adverse party. *Shelton* v. *Ry.,* 86 S. C. 98, 67 S. E. 899; *Birt* v. *Ry.,* 87 S. S. 239, 69 S. E. 233; *Hewlett* v. *R. Co.,* 93 S. C. 76, 76 S. E. 32. Where such amendments are asked for during the trial, if the opposite party would be misled or surprised thereby to his prejudice, it is incumbent upon him to make the fact appear by affidavit or otherwise, to the satisfaction of the Court; and, if that is done, the Court would either refuse the amendment, or, granting it, would continue the hearing, or impose such other terms and conditions as it might deem necessary to prevent prejudice. *Shelton* v. *Ry., supra.*

Defendant contends further that the Court erred in ordering the trial to proceed after the amendment was allowed, notwithstanding the statement made by its attorney that he was not prepared to meet the issue of the alleged dependency of the widow and children upon deceased. The record shows that defendant resisted the motion to amend chiefly on the assertion of the want of power in the Court to grant it, and that its main purpose was to obtain a nonsuit. Evidently, the statement of counsel that his only objection to

proceeding with the trial was that he was not prepared to meet the issue of dependency did not satisfy the Court that he would suffer prejudice on that score; for the Court stated, time and again, that if counsel was taken by surprise and was not prepared to proceed with the trial, he would not force him to go on.    When counsel first raised the objection that he was not prepared to meet the issue of dependency, plaintiff's attorneys consented to strike out the names of two of the children alleged to be dependent, and then claimed damages only for the widow, an unmarried adult daughter and a minor son, who were all shown by clear and undisputed testimony to have been dependent on deceased. Under all the circumstances, as they appear in the record, appellant has failed to satisfy this Court that the trial Judge abused his discretion.    Though the plaintiff and her children all resided in the city of Columbia, where the case was tried, and had resided here with deceased for more than ten years, and the trial lasted three days, no effort at all appears to have been made by the defendant to procure any testimony rebutting or questioning that of the plaintiff on the issue of dependency, not even by cross-examination of her witnesses.    We are impressed that defendant's objection was interposed rather for the purpose of obtaining a technical advantage, and a ground for a new trial, in the event of an adverse verdict, than for the purpose of getting time and opportunity to prepare to meet the alleged new issue, and that, if he had made any showing that he was taken by surprise to his prejudice and had earnestly asked for time to meet the issue, his request would have been granted.

Certainly, in a case like this, where the defendant must be presumed to know the facts surrounding the employment of deceased better than the plaintiff did, it will not be allowed to withhold the facts, until the trial is in progress, and then spring them on the plaintiff, without having alleged them in its answer, to the discomfiture of

the plaintiff.    Such procedure is repugnant to any proper conception of a just administration of law.

From what has already been said, there does not appear to be any sound reason why a plaintiff may not set up in his complaint the same cause of action under the State law and also under the Federal law, stating it separately, of course, and try it under the law which the proof shows to be applicable.    Where the cause of action is so alleged the parties would come to trial prepared to meet the issues which might arise under either aspect of the case.    There is no inherent difficulty in this method of procedure, and it will greatly facilitate the trial of such cases and promote the ends of justice.    Doubtless in most cases the evidence will clearly settle the question whether the State or Federal law is applicable.    But, when, under proper allegations of the complaint or answer, and the evidence adduced, there is an issue of fact whether the State or Federal law is applicable, the case should be submitted to the jury under proper instructions as to both aspects of it, so that the jury may render their verdict under the one or the other, as they may find the facts.    *N. C. R. R. Co.* v. *Zachary,* 34 Sup. Ct. 305, 232 U. S. 248, Ann. Cas. 1914C, 159; *Howell* v. *R. Co.,* 99 S. C. 404, 83 S. E. 639.    Such is our procedure in actions having such a double aspect that they may be regarded either as actions at common law or under a statute.    *Lee* v. *R. Co.,* 84 S. C. 125, 65 S. E. 1031.    Nor is such procedure obnoxious to any provision of the Federal statute.    *Wabash R. Co.* v. *Hayes,* 234 U. S. 86, 34 Sup.

FOOTNOTE.—Upon counsel for appellant calling the attention of the Court to the above language, the latter stated: "The Court regrets that counsel for appellant think that the language of the opinion is an implied criticism of their conduct of the defense.    While we do not think it susceptible of such inference, lest any one may think so, it gives us pleasure to say that it was not so intended.    Saying that counsel sought to obtain a technical advantage to the discomfiture of plaintiff by no means warrants the inference that it was unethical to do so, or even that it was improper."

Ct. 729. In the case last cited, an action was brought under the Federal act. But, omitting the allegations which, if proved, would have made the Federal statute applicable, a cause of action was stated under the State law. The proof failed to show that the injury occurred in interstate commerce, and, at defendant's request, the Court instructed the jury that the Federal statute was not applicable. The case was then submitted to the jury under the State law, and the plaintiff recovered. The Federal Supreme Court sustained the judgment, holding that the State "Court merely gave effect to a rule of local practice, the application of which was not in anywise in contravention of the Federal act."

As there was testimony tending to support some of the specifications of negligence in the complaint, the motion to direct a verdict for defendant was properly refused.

It would be unprofitable to discuss the numerous exceptions in detail. Upon examination of the charge, we find no prejudicial or reversible error therein, or in the refusal to charge. The Court might well have charged defendant's fourth and fifth requests that there was no evidence of negligence in that the train which killed deceased consisted of a great number of cars—more than twelve—or in that the engine was backing and pulling the train. Still we are not satisfied that the refusal was prejudicial. The jury are assumed to be men of common sense, and it is inconceivable that they would have found against defendant merely because the train consisted of any number of cars, or because the engine was backing, if the approach of the train had been signalled by headlight on the engine or in some other way. There was testimony that the headlight of the engine was not lighted, and that a proper lookout was not kept.

We cannot assent to the view that, under no circumstances, is it the duty of the crew of a switching engine moving in a switching yard to give signals of its approach

for the benefit of other employees working in the yard, even though they may know that it is moving about the yard, and be under the duty of looking out for it. But if the law were as contended, the engine in question had not theretofore been moving about the yard. Its regular place of work was in another yard. It had just arrived in the yard where it ran over deceased, and its arrival may not have been expected.

While the undisputed evidence shows that rule U, which forbids the moving of engines or cars backward without lookout, was not aplicable to yard service, it was conceded that it was applicable on the main line. Therefore, under the rule, the engine should have had a lookout while on the main line from Columbia to Cayce. As it was a question of fact whether this more extended movement than yard service had been completed, there was no prejudicial error in admitting the rule, for it was for the jury to say whether, under the circumstances, the lookout should have been kept on the backing engine after it entered the yard and until its extended movement was completed.

The questions involved in the other exceptions have been so frequently considered by the Court that they require no special consideration.

Judgement affirmed.

---

FOOTNOTE.—As to the constitutionality, application and effect of the Federal Employers' Liability Act, jurisdiction, pleadings and practice in actions thereunder, see note in L. R. A. 1915c, 47 to 89, and also *Central Vermont Ry. Co.* v. *White,* 35 Sup. Ct. Reporter 865.