KEITH v. THE T. & P. R. R. CO.

(June 6, 1930. Opinion and Decree.)
(July 23, 1930. Rehearing Refused.)
(October 7, 1930. Writ of Certiorari and Review Granted by Supreme Court.)

E. J. Thilberger and Jos. J. Cullinane, of New Orleans, attorneys for plaintiff, appellant.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, attorneys for defendant, appellee.

WESTERFIELD, J. Eads B. Keith was killed on the 2d day of June, 1925. His widow, Mrs. Winnie Keith, brought suit on her own behalf and on behalf of her minor child, Etta N. Keith, in the civil district court for the parish of Orleans, alleging that her husband, when killed, was employed as a brakeman on a train operated by defendant, the Texas & Pacific Railroad Company, which ran from Boyce, La., to Addis, La., and that "in furtherance of his duty of signaling, switching, and otherwise performing the regular duties of a brakeman and while engaged in the performance of said duty, the train, which was switching at a siding near Lecompte, La., did negligently and without waiting to determine whether

or not the deceased had an opportunity to board the train and without waiting for his signal did leave him at the said siding at Lecompte, La."; that Lecompte, La., was a locality noted for its robberies, thugs, and other dangers, and that the employees of defendant were aware of that fact; that the employees on the train negligently failed to wait for the signal from Keith that he had closed the switch and was aboard the train; that one of the defendant's employees inquired of the conductor as to whether or not Keith had boarded the train and requested that he stop the train and investigate whether or not Keith was aboard, and the said conductor refused to do so, merely answering that Keith was a railroad man and ought to have sense enough to catch the train; "that when the train crew did arrive at the next stop or station and it was finally determined that Keith was missing some of the employees went back and found Keith on or near the track dead with bullet holes in his body, having been killed while waiting for the train to return, which was within the scope of his duty"; "that your petitioner further avers that because of her husband's death she is entitled, as aforesaid, under the Employers' Liability Act of the State of Louisiana to a weekly compensation of Twenty Dollars ($20.00), per week with interest from the date the amounts due petitioner accrued for a period of three hundred (300) weeks for the common benefit of your petitioner and the said minor child, Etta N. Keith."

The suit was filed on May 29, 1926. On June 7, 1926, defendant answered admitting that deceased was employed by it as a brakeman on one of its trains which ran from Boyce, La., to Addis, La., and that he was killed on the 2d day of June while engaged in switching operations near Lecompte, La. It also admitted that his death was caused by four gunshot wounds, evidence of which appeared upon his body when found by the employees of the railroad company, but denied all charges of negligence. For further answer defendant averred that the train upon which Keith was employed at the time of his death was engaged in interstate commerce because part of the freight which it carried was moved from points outside of the state of Louisiana to points within the state; that defendant's liability with reference to the employment of Keith and the injury suffered by him is governed by the Employers' Liability Act of Congress (45 USCA, secs. 51-59), and not by the Workmen's Compensation Law of Louisiana (Act No. 20 of 1914, as amended).

On June 30, 1926, defendant's counsel wrote to plaintiff's counsel inclosing two copies of a stipulation which it was proposed should be signed by both parties. The stipulation which was executed as suggested reads as follows:

"It is stipulated and agreed by and between Mrs. Winnie Keith, plaintiff herein, through her attorneys, Habans & Coleman and E. J. Thilborger, and Texas & Pacific Railway, Company, defendant herein through its attorneys, Spencer, Gidiere, Phelps & Dunbar, that at the time plaintiff's husband, E. B. Keith, was shot and killed at Lecompte, Louisiana, said E. B. Keith was employed in interstate commerce by defendant, said Texas & Pacific Railway Company, a common carrier engaged in interstate commerce by railroad."

In the letter referred to, the following sentence appears:

"Upon the signing of this stipulation, we shall make no objection to your filing a supplemental petition for the purpose of bringing Mrs. Keith's case under the Federal Employers' Liability Act."

On June 30, 1927, Mrs. Keith, having in the meantime qualified as administratrix

in the Texas court, filed a supplemental petition in which it is alleged "that by agreement between counsel for plaintiff and defendant, your petitioner files herewith this supplemental and amended petition to take the place of the original petition filed herein, wherein the proceeding was previously brought under the Workmen's Compensation Act of the State of Louisiana, wherein it is now brought under the Acts of United States Congress governing employers' liability."

In this supplemental petition the amount of $64,000 is demanded for loss of her husband's earnings of $50 per week for 72 weeks and for pain, suffering, and mental anguish. The former charges of negligence are repeated and other charges are added.

To this supplemental petition the defendant answered denying any agreement between counsel which would permit of the substitution of the supplemental petition for the original petition, and answered specifically the other charges of negligence, denying them.

On May 21, 1929, by way of supplemental answer the defendant pleaded the preemption of plaintiff's right of action under section 6 of the Federal Employers' Liability Act of 1908, as amended by Act of April 5, 1910, sec. 1, section 56 of title 45 of the Code of the Laws of the United States (45 USCA, sec. 56), which provides that:

"No action shall be maintained under this chapter unless commenced within two years from the day the cause of action accrued."

The exception was maintained and plaintiff's suit dismissed upon the ground that the supplemental petition was an alteration of the original petition to such an extent as to amount to a separate and distinct cause of action which, having been filed more than two years after the accrual of the right of action, could not be allowed. Plaintiff has appealed.

It will be observed that the stipulation of counsel agreeing that the death of deceased occurred at a time when he was employed and the defendant carrier engaged in interstate commerce was agreed upon on June 30, 1926, a little more than a year after the filing of the suit and some eleven months before the running of the two-year prescriptive period. This agreement and the letter of counsel accompanying it are relied upon by plaintiff as tantamount to a waiver of all objections to the supplemental petition whether of substance or of form. We do not so regard it, but it does appear to us that it amounted to a change in the character of the action made by consent within the two-year period which had the effect of bringing the suit within the purview of the Employers' Liability Act without the necessity of specially mentioning it. Seaboard Air Line Railroad Co. v. Duvall, 225 U. S. 477, 32 S. Ct. 790, 56 L. Ed. 1171; Missouri, Kansas & Texas Railroad Company v. Wulf, 226 U. S. 570, 33 S. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134.

In Koennecke v. Seaboard Air Line Railroad Company, 101 S. C. 86, 85 S. E. 374, the Supreme Court of South Carolina held that in an action for the death of a railroad employee "evidence that he was engaged in interstate commerce was elicited without objection on the cross-examination of one of plaintiff's witnesses, either party might, so long as the evidence remained in the record, claim the benefit of the federal statute, though the pleadings of neither asserted any right or immunity under it." The reason for this announce-

ment was stated to be that where the facts are not changed the cause of action is essentially the same, whether tried under the state or federal law, and that "it could rarely happen that a shifting from one to the other would work prejudicial surprise."

The Supreme Court of the United States in affirming the Koennecke case, 239 U. S. 352, 36 S. Ct. 126, 127, 60 L. Ed. 324, said:

"The cause of action arose under a different law by the amendment, but the facts constituting the tort were the same."

In Seaboard Air Line R. R. Co. v. Renn, 241 U. S. 290, 36 S. Ct. 567, 568, 60 L. Ed. 1006, an employee of a railroad company sued for personal injuries suffered through its negligence. The original pleadings failed to allege that, at the time plaintiff was injured, he was employed in and defendant engaged in interstate commerce. The court permitted an amendment after the running of the two-year prescriptive period. This was complained of by defendant upon the ground that "the original complaint did not state a cause of action under the act of Congress, that with the amendment the complaint would state a new cause of action under that act, and that, as more than two years had elapsed since the right of action accrued, the amendment could not be made the medium of introducing this new cause of action." In discussing the action of the trial court in permitting the amendment, certain allegations of the original complaint were pointed out as not inconsistent with an action brought under the Federal Liability Law, though superfluous if the cause of action arose under the state law; the court saying:

"In these circumstances, while the question is not free from difficulty, we cannot say that the court erred in treating the original complaint as pointing, although only imperfectly, to a cause of action under the law of Congress. And this being so, it must be taken that the amendment merely expanded or amplified what was alleged in support of that cause of action, and related back to the commencement of the suit, which was before the limitation had expired."

In Toledo, St. Louis & Western Railroad Company v. Slavin, 236 U. S. 454, 35 S. Ct. 306, 307, 59 L. Ed. 671, the court reviewed a decision of the Supreme Court of Ohio (88 Ohio St. 536, 106 N. E. 1077) affirming the trial court in overruling a contention of defendant to the effect that the case was governed by the Federal Employers' Liability Law, upon the ground that that fact was made to appear only by evidence admitted over plaintiff's objection, to the effect that the accident, for which the plaintiff sued, happened in interstate commerce, no reference to the Employers' Liability Act being made in plaintiff's complaint or in defendant's answer. In reversing the action of the state court, the Supreme Court of the United States held that: "When the plaintiff brought suit on the state statute, the defendant was entitled to disprove liability under the Ohio act, by showing that the injury had been inflicted while Slavin was employed in interstate business. And, if without amendment the case proceeded with the proof showing that the right of the plaintiff and the liability of the defendant had to be measured by the Federal statute, it was error not to apply and enforce the provisions of that law."

In Central Vermont R. Co. v. White, 238 U. S. 507, 35 S. Ct. 865, 868, 59 L. Ed. 1433, Ann. Cas. 1916B, 252, the court said:

"The declaration contained no allegation that White was engaged in interstate commerce at the time of the collision. The company made this the ground of a plea in bar. The administratrix thereupon filed a replication admitting that the deceased

was engaged in such commerce at the time of his death. The company demurred to the replication on the ground that it was a departure from the cause of action under the federal employers' liability law. This demurrer was overruled." In approving this action of the trial court the Supreme Court said it was sufficient that the state court of appeals (87 Vt. 330, 89 A. 618) held the defect in the declaration "cured by the charge in the plea and the admission in the replication that White was employed in interstate commerce."

We have thus far discussed the case from the standpoint of the effect of the agreement in the stipulation of counsel, and we believe that there is ample authority for the decision that this agreement has the effect of amending the original petition before the running of the statute of limitation, so as to bring the action within the scope of the federal statute. This rule seems to us to present a consideration of manifest equity, for as was said by Judge Moschzisker, in a very able dissenting opinion in Hogarty v. Philadelphia & R. R. Co., 255 Pa. 236, 99 A. 741, 749, 8 A. L. R. 1386, after reviewing a number of authorities, some of which we have used in our discussion, said:

"Thus from the authorities reviewed it may be seen that in causes like the one before us, whenever, by any formal method, it is properly made to appear, or whenever it is directly or impliedly conceded, whether by the pleadings or otherwise, that the accident under investigation happened to an employee of a defendant railroad during the course of interstate commerce, the court will regard this as a governing fact and apply the federal law; and, as suggested in one of the above-cited cases, when we consider that in the vast majority of instances the plaintiff has no way of knowing whether or not he was injured in interstate commerce, while the defendant almost invariably has such knowledge, it is plain that the rule as stated is a just one. Moreover, it is a rule from which no material wrong can flow; for, as suggested in another of the cases, a party taken by surprise is always

entitled to a continuance if the trial court be convinced that he may suffer harm."

But we do not base our conclusion solely upon the effect of the stipulation of counsel, for without it there is ample authority for the proposition that a petition or complaint may be amended after the running of the two-year prescription period so as to introduce for the first time the question of interstate commerce and the application of the federal statute. Broom v. Southern R. Co., 115 Miss. 493, 76 So. 525; Nashville, Chattanooga & St. Louis R. R. v. Anderson, 134 Tenn. 666, 185 S. W. 677, L. R. A. 1918C, 1115 Ann. Cas. 1917D, 902; Seaboard Air Line R. R. Co. v. Koennecke, 239 U. S. 352, 36 S. Ct. 126, 60 L. Ed. 324; N. Y., etc., R. R. Co. v. Kinney, 260 U. S. 340, 43 S. Ct. 122, 67 L. Ed. 294. In the last-cited case the holding of the court as expressed in the syllabus was as follows:

"Where the original complaint in a railway engineer's action for injuries sets forth facts that would have given a cause of action at common law under the statutes of New York or under the federal Employers' Liability Act Comp. St., secs. 8657-8665 (45 USCA, secs. 51-59), as one or another law might govern, though alleging notice required by the New York statute, and to that extent pointing thereto, an amended complaint, alleging that the parties were engaged in interstate commerce, was not barred by limitations."

The case of Missouri, Kansas & Texas Railroad Company v. Wulf, 226 U. S. 570, 33 S. Ct. 135, 137, 57 L. Ed. 355, Ann. Cas. 1914B, 134, is approved in the Kinney case. The Wulf case permitted a similar amendment to be made to the complaint as merely an enlargement of the pleadings. But, says counsel, in this case the court said that "it was sufficiently averred that the deceased came to his death through injuries suffered while he was

employed by the defendant railroad company in interstate commerce." In speaking of this feature of the Wulf case, the Supreme Court in the Kinney case said:

"It is true that the fact of the injury arising in interstate commerce was pleaded by the defendant. But it was pleaded as a bar to the action as it then stood and only makes more marked the changes that the amendment introduced. We do not perceive that the effect of the amendment in that case distinguishes it from this. It really is a stronger case, because, as we have said, here the declaration was consistent with a wrong under the law of the State or of the United States as the facts might turn out."

Defendant, however, relies on Union Pacific Railroad Company v. Wyler, 158 U. S. 285, 15 S. Ct. 877, 881, 39 L. Ed. 983. There is no question but that the Wyler case is inconsistent with the current of authority both before and since its appearance, and we must regard the authority of that decision as being impeached by subsequent utterances from the same exalted source. The Wyler case held that in order to recover under a statute, the statute must be pleaded whether the facts were sufficient to bring the case within the statute, or not, because "it required the pleading of the statute to give them any vitality at all. As we have seen, that statute is not mentioned or intimated in the original declaration, and hence to have allowed the amendment offered would have been allowing the introduction of a new cause of action."

Exactly the opposite to this is held in Seaboard Air Line R. R. Co. v. Koennecke, 239 U. S. 352, 36 S. Ct. 126, 60 L. Ed. 324; Toledo, St. Louis & Western Railroad Company v. Slavin, 236 U. S. 454, 35 S. Ct. 306, 59 L. Ed. 671; Central Vermont R. Co. v. White, 238 U. S. 507, 35 S. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252.

The case of Baltimore & Ohio S. W. R. R. Co. v. Carroll, decided February 24, 1930, 280 U. S. 491, 50 S. Ct. 182, 183, 74 L. Ed. _____, relied upon by counsel as an affirmance of the Wyler decision, presents a totally different issue, because in the Carroll case the amendment sought to be made to the original suit was one where recovery was claimed for a death, the original suit being brought for personal injuries, and it was held that the amendment constituted a different cause of action because, "although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. * * * One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong, but a single recovery for a double wrong."

In Baltimore S. S. Co. v. Phillips, 274 U. S. 316, 47 S. Ct. 600, 602, 71 L. Ed. 1069, decided May 16, 1927, we find the following language:

"A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. The mere multiplication of grounds of negligence alleged as causing the same injury does not result in multiplying the causes of action. The facts are merely the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear. "The thing, therefore, which in contemplation of law as its cause, becomes a ground for action, is not the group of facts alleged in the declaration, bill, or indictment, but the

result of these in a legal wrong, the existence of which, if true, they conclusively evince." ' "

See also Berube v. Horton, 199 Mass. 421, 85 N. E. 474.

We are free to confess that the question before us is perplexing, as is clearly shown by the nicety of distinction which characterizes the jurisprudence on this subject. Some of these distinctions may be said to depend upon "the estimation of a hair," but the trend of judicial opinion unquestionably favors the maintenance of the causes and the permission of amendments where necessary to that end.

In Louisiana the present attitude of our courts in permitting an amendment to a petition following the maintenance of an exception of no cause of action based upon insufficiency of allegation, when contrasted with the language of a justice of our Supreme Court who expressed the prevailing opinion some thirty years ago to the effect that a petition which discloses no cause of action is no petition, and hence there is nothing to amend, affords a conspicuous example of the trend of judicial thought.

The Supreme Court of the United States, in the Kinney case, supra, declared that a liberal rule should be given in these cases:

"Of course an argument can be made on the other side, but when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied."

This principle of liberality of construc-

tion is applied with increasing frequency and authority. The inflexible fiat of law, in its application, yields something of its austerity in a benignant gesture deferring to its underlying basis public sentiment and popular will.

In a very recent case Justice Holmes (Danovitz v. U. S., 50 S. Ct. 344, 345, 74 L. Ed. _____, decided May 5, 1930), without a dissent, based his conclusion solely upon the divine inspiration of a statute of the United States which prohibited the manufacture of intoxicating beverages. We say solely upon the celestial aura of the statute because, terrestrially considered, corks and containers, bottles and strainers form no part and discharge no function in the process of manufacture of alcoholic liquors, certainly not during the period of best development of the distillers' art and technique, a fact which the court seemed to recognize, for it said that such articles were not used in the manufacture of liquor in the strictest sense, but "as the purpose of the Prohibition Act (27 USCA) was to 'suppress the entire traffic' condemned by the act * * * it should be liberally construed to the end of this suppression, and so directs. * * * The decisions under the revenue acts have little weight as against legislation under the afflatus of the Eighteenth Amendment."

Our conclusions are that the judgment dismissing plaintiff's suit is erroneous, and for the reasons herein assigned it is reversed, and it is now ordered that this case be remanded to the Civil District Court for further proceedings according to law and consistent with the views herein expressed.

JANVIER, J. (dissenting). My associates concede that the question presented is a

very close one and that the stipulation which, to some extent, is relied on by plaintiff, cannot be construed as a waiver of the period of pre-emption.

I believe that the most important thing to determine is whether or not the defendant will or may be prejudiced by allowing the amendment.

Being of the opinion that the proof necessary to the establishment of the allegations in the second or so-called amended petition must have been essentially different from what would have been required to establish those set forth in the original petition, I believe that the second petition was not an amendment of the first, but, in fact, constituted the setting up of a new and different cause of action.

In Clark v. Gulf, Mobile & Northern R. R. Co., 132 Miss. 627, 97 So. 185, 186, is found a case resembling this one more closely than any of the others cited on either side, and in it the Supreme Court of Mississippi said:

"The original declaration is purely a suit to enforce an unusual and exceptional right in derogation of the common law given by this statute. The amendment stated facts for which a cause of action is given either under the common law or the federal Employers' Liability Act, whichever law governs. By this amendment there was therefore a change from the Mississippi statute in derogation of the common law to the federal Employers' Liability Act. This is a change or departure from law to law, and therefore the second count states a different cause of action. U. P. Railroad Co. v. Wyler, 158 U. S. 285, 15 S. Ct. 877, 39 L. Ed. 983, is directly in point and determinative of this question. In that case the converse of the question here presented was before the Supreme Court of the United States."

Counsel for plaintiff relies much on New York Central & H. R. R. Co. v. Kinney, 260 U. S. 340, 43 S. Ct. 122, 67 L. Ed. 294, in which the Supreme Court said that the reason for the enforcement of the statute of limitation does not exist where the defendant has had notice that the plaintiff sets up and is trying to enforce a claim against it, because of conduct specified in the first petition. I, of course, agree with the reasoning of that decision, and I would readily concur in the majority opinion here if I felt that the first petition had set up conduct as a result of which recovery could be had under the second petition. But I believe that by the very reasoning of that decision the sustaining of the plea of prescription is imperative here.

When the first petition was filed, defendant, it is true, was thereby put on notice that an accident had occurred and that plaintiff's husband had been killed. But at the same time, and by the same petition, defendant was also put on notice that the suit was brought under the state Compensation Act. There was no alternative prayer that in the event that the state Compensation Act had no application defendant was liable by reason of the negligence of its employees, but the suit was brought solely and only under the state Compensation Act, and under that act the question of negligence vel non did not enter into the case.

More than two years later, by the amendment, defendant was told, "it is your negligence which caused the accident." Thus, after being lulled into a sense of security so far as the necessity of disproving negligence was concerned, defendant, who may have allowed its employees to become scattered and may have allowed its

records and statements to be destroyed or lost, found itself under the necessity of re-preparing the case on a new issue entirely.

As illustrative of the fact that in the many cases referred to in the majority opinion the amendment was allowed because both the original petition and the amended petition relied for recovery on negligence, I cite the decision of the Supreme Court of the United States in Seaboard Air Line R. R. Co. v. Koennecke, 239 U. S. 352, 36 S. Ct. 126, 127, 60 L. Ed. 324, in which that court said:

"The cause of action arose under a different law by the amendment, but the facts constituting the tort were the same."

It immediately appears that the two claims presented in that case both were alleged to result from tort or negligence, and that therefore the acts complained of were the same, whether the suit was tried under the first petition or under the amendment. But here, if the suit had been tried under the first allegation, negligence would have had no part whatever in the matter, while, if it had been tried under the second, negligence was the sole issue.

I think that all of the reasons for the enforcement of the period of pre-emption as fixed in the federal statute are extant here.

I therefore respectfully dissent.